[Cite as *State v. Maddickes*, 2013-Ohio-4510.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

STATE OF OHIO                                  :

     Plaintiff-Appellee                  :                    C.A. CASE NO.    2013 CA 7

v.                                             :                    T.C. NO.    12CR180

MICHAEL MADDICKES                              :                    (Criminal appeal from
                                                                   Common Pleas Court)

     Defendant-Appellant             :

                                               :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____11th____ day of ____October____, 2013.

. . . . . . . . . .

LISA M. FANNIN, Atty. Reg. No. 0082337, Assistant Prosecuting Attorney, 50 E.
Columbia Street, 4th Floor, P. O. Box 1608, Springfield, Ohio 45501
     Attorney for Plaintiff-Appellee

CHRISTOPHER B. EPLEY, Atty. Reg. No. 0070981, 100 E. Third Street, Suite 400,
Dayton, Ohio 45402
     Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1} Michael Maddickes appeals from a judgment of the Clark County
Court of Common Pleas, which denied his presentence motion to withdraw his guilty plea,
found him guilty of rape and attempted rape based on his plea, and sentenced him to

consecutive terms of imprisonment.

{¶ 2}   For the following reasons, the judgment of the trial court will be affirmed.

{¶ 3}   In March 2012, Maddickes was indicted on two counts of rape and one count of attempted rape. At the time, Maddickes was incarcerated in Indiana on other charges. According to the prosecutor's statements at the dispositional hearing, Maddickes was linked with the Ohio offenses, which occurred in 2004, through DNA testing.

{¶ 4}   Maddickes entered into a plea agreement whereby he pled guilty to one count of rape and to attempted rape, in exchange for which the State agreed to dismiss the second count of rape. At his plea hearing, Maddickes was informed of the maximum possible sentences of ten and eight years, respectively, and that these sentences could run consecutively to each other and to any sentences he was serving in Indiana. Further, Maddickes was informed that he would be subject to a mandatory term of postrelease control and that he would be classified as a Tier III sexual offender, and the court explained what these portions of his sentence would entail. Maddickes indicated that he understood his rights and the potential consequences of his plea before it was entered. The court then ordered a presentence investigation.

{¶ 5}   Three days before the dispositional hearing, Maddickes filed a motion to withdraw his plea.

{¶ 6}   At the dispositional hearing, the court modified its prior statements about Maddickes's potential sentence in one respect: the court noted that the offenses to which Maddickes was pleading guilty occurred in 2004, prior to the enactment of S.B. 10 and its tiered sex-offender classifications. The court concluded that Maddickes would actually be

classified as a sexually-oriented offender, under the prior sentencing scheme, rather than a Tier III sex offender, and the court explained the requirements imposed upon a sexually-oriented offender. (The obligations imposed upon a sexually-oriented offender are "less onerous" than those imposed on a Tier III sex offender. *State v. Brunning*, 134 Ohio St.3d 438, 2012-Ohio-5752, 983 N.E.2d 316, ¶ 14.) Maddickes indicated that he understood this change.

{¶ 7} At the date set for disposition, the court conducted a hearing on the motion to withdraw the plea as well as the sentencing hearing. Maddickes testified that he wanted to withdraw his former plea because he was not guilty of the offenses. He further testified that he "was scared" when he entered his plea, that he "didn't understand the laws or the stipulations," that he wanted to "be a grandfather to his kids' kids," and that, with the sex offender classification that would be imposed pursuant to his plea, he would "be walking around still with cuffs on" after he was released from prison and would "still [be] convicted and locked up and would have to worry about not being at basketball, schools, Halloween." When he realized these restrictions, he "just want[ed] to take it to trial." When Maddickes was questioned by the prosecutor about his prior statements to the court that he had understood the plea agreement, Maddickes claimed that he was "having anxiety attacks" and was "scared" when he answered the questions.

{¶ 8} The trial court observed that, at the plea hearing, Maddickes had indicated his understanding of everything that had been explained to him, that he had not been under the influence of drugs or alcohol, and that he had expressed satisfaction with his legal representation. The court also noted that the sexual offender classification that had been

described to Maddickes at the plea hearing, which he indicated he had understood, was more harsh than the one discussed at the dispositional hearing, such that the requirements that would be imposed pursuant to his plea were "significantly less than he accepted at the time of the plea." The court also noted that Maddickes had not appeared "nervous or upset in any way" at the plea hearing. For these reasons, the trial court found an insufficient basis for withdrawal of the plea.

{¶ 9} After the State presented the facts surrounding the charges, Maddickes was allowed to address the court. Maddickes stated that he had been "threatened" by the prosecutor with an additional count of kidnapping if he tried to go to trial to prove his innocence. Maddickes also asserted that he was not an "animal" or a "creep" and that he "was just wanting to get this over with" because he had children to provide for, and that he did not "understand half of this paperwork" or the Tier III classification.

{¶ 10} The trial court sentenced Maddickes to ten years for rape and five years for attempted rape, to be served consecutively to one another and to the sentence he was then serving in Indiana.

{¶ 11} Maddickes appeals, raising two assignments of error.

{¶ 12} The first assignment of error states:

THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO WITHDRAW HIS FORMER PLEA.

{¶ 13} Maddickes contends that he should have been permitted to withdraw his plea, because such a motion should be liberally and freely granted prior to sentencing.

{¶ 14} Crim.R. 32.1 provides that "[a] motion to withdraw a plea of guilty or no

contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Under Crim.R. 32.1, a pre-sentence motion to withdraw a guilty plea "should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). However, "[a] defendant does not have an absolute right to withdraw his plea, even if the motion is made prior to sentencing." *Id.*; *State v. Hess*, 2d Dist. Montgomery No. 24453, 2012-Ohio-961, ¶ 18.

{¶ 15} In reviewing a trial court's decision on a defendant's motion to withdraw his plea filed before sentencing, we apply the following factors: (1) the accused was represented by competent counsel; (2) the accused was afforded a full Crim.R. 11 hearing before he entered his plea; (3) the accused was given a complete, impartial hearing on the motion to withdraw; and (4) the court gave full and fair consideration to the request to withdraw. *State v. Peterseim*, 68 Ohio App.2d 211, 214, 428 N.E.2d 863 (8th Dist.1980). A change of heart or mistaken belief about his plea is not a reasonable basis requiring a trial court to permit the defendant to withdraw his plea. *State v. Lambros*, 44 Ohio App.3d 102, 103, 541 N.E.2d 632 (8th Dist.1988). However, in considering whether to allow withdrawal of the plea, it is not simply sufficient for the trial court to find that the Crim.R. 11 colloquy satisfied the requirements of that Rule and the United States and Ohio Constitutions; if it were, even a presentence plea could never be withdrawn.

{¶ 16} It is within the sound discretion of the trial court to grant or deny a motion to withdraw a guilty plea. *Xie* at 526. We will not reverse a trial court's decision to deny a motion to withdraw a guilty plea absent an abuse of discretion. *Id.* at 527, citing *State v.*

*Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). "The abuse of discretion standard is defined as '[a]n appellate court's standard for reviewing a decision that is asserted to be grossly unsound, unreasonable, illegal, or unsupported by the evidence.'" *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, 932 N.E.2d 245, ¶ 18 (2d Dist.), quoting Black's Law Dictionary, Eighth Edition (2004), at 11; *State v. Broadnax,* 2d Dist. Montgomery No. 24121, 2011-Ohio-2182, ¶ 14.

{¶ 17}   At Maddickes's plea hearing, he indicated that he understood the plea and its ramifications and that he was satisfied with his legal representation.  According to the court, he appeared to be composed and calm; he denied being under the influence of alcohol or drugs.  The hearing complied with Crim.R. 11.  The State's brief states: "Maddickes did not have a complete defense to the charges.  Maddickes'[s] DNA was a match to the DNA obtained from the rape test in the instant matter."  To some extent, this begs the question, since Maddickes contended he was "not guilty of the offense."  We cannot tell from the record (including Maddickes's statements) whether he contends the offenses never happened, that there was consent, that there were problems with the DNA acquisition or testing, or that he was not guilty for other reasons.

{¶ 18}   When Maddickes testified at the hearing on the motion to withdraw his plea, he stated several reasons for wanting to withdraw his plea, and he contradicted many of the statements he made at the plea hearing, such as his previous assertion that he had understood the plea.  However, the trial court was not required to credit this testimony. The trial court gave full and fair consideration to Maddickes's motion to withdraw his plea. On this record, the trial court did not abuse its discretion in denying Maddickes's request to

withdraw his guilty plea.

{¶ 19}   The first assignment of error is overruled.

{¶ 20}   The second assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION BY SENTENCING APPELLANT TO CONSECUTIVE SENTENCES WITHOUT MAKING CERTAIN FINDINGS REQUIRED BY R.C. 2929.14.

{¶ 21}   Maddickes contends that the trial court's findings did not support the imposition of consecutive sentences.

{¶ 22}   With respect to consecutive sentencing, R.C. 2929.14(C)(4) provides:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:   (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the

multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 23} The trial court had before it several pieces of evidence that supported the imposition of consecutive sentences. The court relied on Maddickes's criminal record, which included three domestic violence convictions (1999, 2002, and 2003) and a battery conviction (2010) that resulted in the death of another person.[1] Maddickes was serving "at least 14 years" in Indiana on the battery at the time of his plea, and he had been on probation for one of the domestic violence convictions when the rape and attempted rape occurred. The court also found that Maddickes showed no remorse for his offenses. The court concluded that "Defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

{¶ 24} The trial court made the findings required by R.C. 2929.14(C) for the imposition of consecutive sentences and those findings were supported by the record. The trial court did not abuse its discretion in imposing consecutive sentences.

{¶ 25} In addition to its finding about the need for consecutive sentences to protect the public, the court stated that "the harm caused by these two offenses was so great or unusual that no single prison term for any of the offenses committed * * * adequately

---

[1] At the dispositional hearing, Maddickes denied that the victim of the battery had died, as stated in the presentence investigation.

reflects the seriousness of the offender's conduct." The court did not state its basis for this conclusion, and the basis for such a conclusion is not apparent from the record. However, in light of the court's other findings, we need not consider whether its finding of "great or unusual" harm was supported by the record.

{¶ 26}    The second assignment of error is overruled.

{¶ 27}    The judgment of the trial court will be affirmed.

. . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Lisa M. Fannin
Christopher B. Epley
Hon. Richard J. O'Neill