[Cite as *State v. Chipman*, 2018-Ohio-33.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27484 |
| | : | |
| v. | : | Trial Court Case No. 16-CRB-4824 |
| | : | |
| SELMA CHIPMAN | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of January, 2018.

. . . . . . . . . .

STEPHANIE L. COOK, Atty. Reg. No. 0067101, Dayton Municipal Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

JOHN S. PINARD, Atty. Reg. No. 0085567, 120 W. Second Street, Suite 603, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Selma Chipman was found guilty by the Dayton Municipal Court on her no contest plea to cruelty against companion animal. Chipman appeals from her conviction, claiming that the trial court did not comply with Crim.R. 11 at the plea hearing and erred in denying her subsequent presentence motion to withdraw her plea. For the following reasons, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

{¶ 2} According to the facts presented at the plea hearing, Chipman, who was 82 years old, owned a German Shepherd named Chinook (aka Chookie) for approximately six years. On June 28, 2016, Chinook was taken to her veterinarian at North Main Animal Clinic to be spayed.[1] Upon examination of Chinook, the veterinarian noticed that the dog was in poor health. Specifically, the dog suffered from alopecia, it had an external ear tear, there was discharge from both eyes, there was loss of hair, there were marks on the dog's hocks, and the dog had an "overwhelming smell of an infection." The veterinarian diagnosed Chinook with demodectic mange.

{¶ 3} The prosecutor explained at the plea hearing that Chinook had been bitten by a mange mite, which caused itching and scratching. Chinook did not receive prompt treatment, which would have been inexpensive, and the scratching resulted in loss of fur, as well as yeast and staph dermatitis infections.

{¶ 4} On July 15, 2016, Chipman was charged by complaint with two counts of cruelty against companion animal, in violation of former R.C. 959.131(C)(2) (Count Two)

---

[1] The presentence investigation report indicated that Paw Patrol took Chinook to the veterinarian after receiving Chipman's consent. However, the prosecutor did not provide this detail at the plea hearing.

and (C)(5) (Count One).[2]  Both offenses were second-degree misdemeanors.  Former R.C. 959.99(E)(2).[3]  At the time of the offenses, R.C. 959.131(C) read:

(C) No person who confines or who is the custodian or caretaker of a companion animal shall negligently do any of the following: * * *

(2) Omit any act of care by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief, against the companion animal;

* * *

(5) Deprive the companion animal of necessary sustenance, confine the companion animal without supplying it during the confinement with sufficient quantities of good, wholesome food and water, or impound or confine the companion animal without affording it, during the impoundment or confinement, with access to shelter from heat, cold, wind, rain, snow, or excessive direct sunlight, if it can reasonably be expected that the companion animal would become sick or suffer in any other way as a result of or due to the deprivation, confinement, or impoundment or confinement in any of those specified manners.

Chipman initially pled not guilty to the charges.

{¶ 5} The record contains references to a civil case that was also filed related to

---

[2] R.C. 959.131 was amended, effective September 13, 2016.  Former R.C. 959.131(C)(5) is currently codified, with minor revisions, as R.C. 959.131(D)(2).  Former R.C. 959.131(C)(2) is encompassed by current R.C. 959.131(D)(1).

[3] Under the current version of R.C. Chapter 959, the penalty for a violation of R.C. 959.131(D) is addressed in R.C. 959.99(E)(3).

Chinook. The details of that civil case are not in the record, except that it was pending at the same time as her criminal case.

{¶ 6} On October 24, 2016, the scheduled trial date, Chipman orally pled no contest to Count Two of "companion animal," in exchange for which Count One would be dismissed. (The plea form indicated that Chipman was pleading no contest to "the charge(s) against me," not a particular charge.) After the prosecutor gave a statement of the facts and circumstances underlying the charge, the trial court found Chipman guilty, ordered a presentence investigation (including a psychological examination), and scheduled a hearing on Chipman's ability to pay financial sanctions.

{¶ 7} On January 5, 2017, Chipman filed a presentence motion to withdraw her plea. Chipman stated in her supporting memorandum that "she did not understand the nature of her charges and possible penalties and that she is not guilty of said charges and/or has a complete defense to the charge or charges."

{¶ 8} On January 30, 2017, the trial court (a different judge than had taken the plea) held a hearing on the motion, at the end of which it orally overruled the motion. The trial court concluded that the court had complied with Crim.R. 11 at the plea hearing, that Chipman had "a seasoned attorney," and that "every reasonable effort" had been made to ensure that Chipman understood what was occurring at the plea hearing. The court told Chipman that, "from our conversations today[,] I don't get an additional sense that you don't understand and so for that reason I am going to deny your motion to withdraw your plea."

{¶ 9} On February 9, 2017, the trial court sentenced Chipman on Count Two (former R.C. 959.131(C)(2)) to 90 days in jail, all of which suspended, imposed five years

of community control, and ordered her to pay a fine of $750. The trial court also ordered that Chipman have no animals at her residence and that she allow inspections by the police and the Humane Society of Greater Dayton. Chipman was to remove her horses from her property by April 20, 2017.

{¶ 10} Chipman appeals from her conviction, raising two assignments of error. She claims that (1) the trial court failed to comply with Crim.R. 11 when taking her plea, and (2) that the trial court abused its discretion in denying her presentence motion to withdraw her plea.

## II. Chipman's Plea to Cruelty Against Companion Animal

{¶ 11} In her first assignment of error, Chipman claims that her plea was defective, because the trial court failed to fully inform her of the effect of her no contest plea. In response, the State asserts that Chipman was fully informed about the effect of her no contest plea in the plea form, which she signed.

{¶ 12} Crim.R. 11 sets forth distinct procedures for the trial court to follow in accepting a plea, with the procedures varying based on whether the offense involved is a misdemeanor that is a petty offense, a misdemeanor that is a serious offense, or a felony. *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, ¶ 11; *State v. Watkins*, 99 Ohio St.3d 12, 2003-Ohio-2419, 788 N.E.2d 635; *State v. Hall*, 2d Dist. Greene No. 2011 CA 32, 2012-Ohio-2539, ¶ 18. For a "petty offense" misdemeanor, such as Chipman's offense of cruelty against companion animal, the trial court was required only to inform Chipman of the effect of her no contest plea. *Jones* at ¶ 14; Crim.R. 11(E); *see* Crim.R. 2 (defining classifications of offenses). For a no contest plea, "a defendant must be informed that the plea of no contest is not an admission of

guilt but is an admission of the truth of the facts alleged in the complaint, and that the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding." *See Jones* at ¶ 23.

{¶ 13} The Ohio Supreme Court has not required the trial court to orally inform a defendant of the effect of his or her plea. *See Jones* at ¶ 51. As the supreme court stated in *Jones*, "Whether orally or in writing, a trial court must inform the defendant of the appropriate language under Crim.R. 11(B) before accepting a plea." *Id.* The Ohio Supreme Court found the notification lacking in *Jones* where "the language of Crim.R. 11(B)(1) [was] missing from the record. It was not contained in the colloquy or provided in written form to Jones." *Id.*

{¶ 14} We note that, unlike the provisions applicable to more serious offenses, Crim.R. 11(E) does not require the trial court to personally address the defendant and determine that the defendant understands the nature of the charge and is entering the plea voluntarily. *See Jones* at ¶ 13; *State v. Wright*, 2d Dist. Montgomery 26471, 2015-Ohio-3919, ¶ 17, citing *State v. Hopkins*, 2d Dist. Greene No. 2002-CA-108, 2003-Ohio-5963, ¶ 16. Furthermore, the Supreme Court of Ohio has held that a defendant must establish that the failure to comply with nonconstitutional rights, such as the information contained in Crim.R. 11(B)(1), resulted in prejudice, meaning the defendant would not have entered his or her plea. *Jones* at ¶ 52.

{¶ 15} In this case, Chipman was 82 years old when the plea hearing was held. After Chipman initially expressed that she could not hear, the trial court asked Chipman if she wanted to plead no contest to one charge in exchange for the dismissal of the other. Chipman responded that she did not understand what the court was talking about. When

defense counsel told Chipman "[i]t's what we talked about this morning," Chipman said, "No, you never said anything about if they take one thing and another thing," and she asked the trial court to explain. The trial court told Chipman that she had "two charges right now. Each of them carry up to ninety days in jail and a seven hundred and fifty dollar fine. They are willing to dismiss one and you can plead no contest to the other."

{¶ 16} Chipman asked the trial court what the offense was called, and the trial court told her it was called "companion animal." Chipman responded to the court that she loved her dog, that her dog had her "own big chair" in the living room, that she did not mistreat the dog, and that she was treating Chinook with "wound dust," which is used on horses. (Chipman also had five horses.) Chipman said she didn't know if she wanted to enter a plea. The trial court gave Chipman and her counsel an opportunity to go into a conference room to discuss the matter further.

{¶ 17} Upon resuming the proceedings, Chipman acknowledged that she had a chance to talk to her attorney and that he had "explained a few things to me." The following exchange then occurred:

> THE COURT: Okay, so do you want to take the offer to plead to one count and they will dismiss the other one?
>
> THE DEFENDANT: Yeah, yeah.
>
> THE COURT: Okay and you understand the potential penalty is up to ninety days in jail and a seven hundred and fifty dollar fine. That's the maximum penalty by law.
>
> THE DEFENDANT: Now, is, now wait a minute now.
>
> THE DEFENSE: She is telling you the maximum penalty and fine. She is

not saying what she's doing. She is just telling you the maximum.

THE DEFENDANT: Oh, okay.

THE COURT: Do you understand that?

THE DEFENDANT: Yeah, yeah.

THE COURT: Okay, how do you plead to one count of companion animal?

THE DEFENSE: That's no contest.

THE DEFENDANT: No count.

THE DEFENSE: No contest.

THE DEFENDANT: No, no count --

THE DEFENSE: No contest.

THE DEFENDANT: No contest or whatever you want to call it.

THE COURT: I guess I need to call the case too, *State of Ohio v. Selma Chipman*, 16 CRB 4824, recalling that. Okay, you are pleading no contest?

THE DEFENDANT: Yes.

THE COURT: Do you understand a no contest plea is not an admission of guilt but you are not contesting the facts in the complaint?

THE DEFENDANT: Yeah, mm-hmm.

THE COURT: Yes?

THE DEFENDANT: Yes.

THE COURT: And you are giving up your right to trial.

THE DEFENDANT: Yeah, whatever you all say. Whatever you say.

THE COURT: Well, when you, when you plea[d], when you plea[d] do you understand that we are not going to have a trial today?

THE DEFENDANT: Yeah, okay.

THE COURT: You are waiving that right, okay.

THE DEFENDANT: Okay.

THE COURT: Your, your plea is being voluntarily and intelligently made?

THE DEFENDANT: My what?

THE COURT: Your [sic] pleading on your own volition?

THE DEFENDANT: Yeah.

THE COURT: Okay, have you had the opportunity to review and sign the plea of no contest form?

THE DEFENSE: Whhat [sic], is this it right here?

THE COURT: I guess I should have had you take that back.

THE DEFENDANT: Can I ask you a question?

THE COURT: Yeah.

THE DEFENDANT: Where's Chinook at?

THE COURT: She's in foster care right now.

THE DEFENDANT: Is she still with the same people?

THE COURT: Yes.

THE DEFENDANT: Can I get her back?

THE COURT: We're, not right now, I don't believe so.

THE DEFENDANT: And there is something else I'd like to ask you. I did not –

THE COURT: Well, why don't you –

THE DEFENSE: Hold, hold on, it's one step at a time.

THE COURT: Hold on, hold on a second. Let's go through this paperwork and then I'm going to let you talk at the end, okay?

THE DEFENDANT: Okay, I'm sorry.

THE COURT: No, just take your time for a minute.

THE DEFENDANT: I'm, I'm pretty dumb on these things.

THE COURT: No, we will help you out.

THE DEFENSE: This is every –

THE DEFENDANT: I've never been in court before like this.

THE DEFENSE: Miss Chipman, this is everything that we have already talked about on several occasions, read it again if you want. It's all the same.

THE DEFENDANT: Where do I sign, right there?

THE DEFENSE: You sign right there and right there on that line there.

THE COURT: Okay, do you have any questions about your rights?

THE DEFENDANT: All right, what I was asking, is there –

THE DEFENSE: Wait one step at a time.

THE COURT: Just about your rights.

THE DEFENSE: She first, you can tell her that in a minute. She is asking to make sure you understand what we are doing and –

THE DEFENDANT: Yeah, I understand this now.

THE DEFENSE: What you are signing.

THE COURT: Okay, now the prosecutor has to read the facts into the record since you have plead [sic] no contest.

\* \* \*

{¶ 18} After the prosecutor informed the court of the facts and circumstances of the offense, the trial court found Chipman guilty on her no contest plea.

{¶ 19} Upon review of the plea hearing transcript and the record, the trial court substantially complied with the requirements of Crim.R. 11 regarding a plea to a petty offense. The trial court orally informed Chipman that her no contest plea was not an admission of her guilt, but was an admission to the truth of the facts alleged in the complaint. *See* Crim.R. 11(B)(2). Although the trial court did not orally inform Chipman that her no contest plea "shall not be used against the defendant in any subsequent civil or criminal proceeding," as required by Crim.R. 11(B)(2), that information was included on the plea form, which Chipman signed in open court; Chipman indicated that she understood what she was doing when she signed the plea form.

{¶ 20} Chipman's first assignment of error is overruled.

### III. Chipman's Presentence Motion to Withdraw Plea

{¶ 21} In her second assignment of error, Chipman claims that the trial court abused its discretion when it denied her presentence motion to withdraw her no contest plea.

{¶ 22} Crim.R. 32.1 provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Under Crim.R. 32.1, a presentence motion to withdraw a guilty plea "should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). However, "[a] defendant does not have an absolute

right to withdraw his plea, even if the motion is made prior to sentencing." *Id.*; *State v. Hess*, 2d Dist. Montgomery No. 24453, 2012-Ohio-961, ¶ 18.

{¶ 23} In reviewing a trial court's decision on a defendant's motion to withdraw his or her plea filed before sentencing, we apply the following nine factors: (1) whether the accused was represented by highly competent counsel, (2) whether the accused was given a full Crim.R. 11 hearing before entering the plea, (3) whether a full hearing was held on the motion, (4) whether the trial court gave full and fair consideration to the motion, (5) whether the motion was made within a reasonable time, (6) whether the motion sets out specific reasons for the withdrawal, (7) whether the accused understood the nature of the charges and possible penalties, (8) whether the accused was perhaps not guilty of or had a complete defense to the charge or charges, and (9) whether the state is prejudiced by withdrawal of the plea. *E.g., State v. Becraft*, 2017-Ohio-1464, __ N.E.3d __ (2d Dist.); *State v. Warrix*, 2d Dist. Montgomery No. 26556, 2015-Ohio-5390, ¶ 29.

{¶ 24} "In considering these factors, the trial court employs a balancing test; no single factor is dispositive." *Warrix* at ¶ 30, citing *State v. Preston*, 2d Dist. Montgomery No. 25393, 2013-Ohio-4404, ¶ 20. However, "[t]he ultimate question for the trial court is whether there is a 'reasonable and legitimate basis for the withdrawal of the plea.'" *Id.*, quoting *Xie*, 62 Ohio St.3d at 527. A change of heart or mistaken belief about the plea is not a reasonable basis requiring a trial court to permit the defendant to withdraw his or her plea. *State v. Maddickes*, 2d Dist. Clark No. 2013 CA 7, 2013-Ohio-4510, ¶ 15. However, in considering whether to allow withdrawal of the plea, it is not simply sufficient for the trial court to find that the Crim.R. 11 colloquy satisfied the requirements of that Rule and the United States and Ohio Constitutions; if it were, even a presentence plea

could never be withdrawn. *Id.*

{¶ 25} It is within the sound discretion of the trial court to grant or deny a motion to withdraw a plea. *Xie* at 526. We will not reverse a trial court's decision to deny a motion to withdraw a guilty or no contest plea absent an abuse of discretion. *Id.* at 527, citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 26} The record reflects that Chipman was represented by competent counsel at the plea hearing, that the trial court had complied with the requirements of Crim.R. 11 for a petty offense, that Chipman received a hearing on her motion to withdraw her plea, and the trial court gave full and fair consideration of the motion at the January 30, 2017 hearing. Chipman filed her motion on January 5, 2017, approximately two and one-half months after her plea hearing, but prior to sentencing. The prosecutor indicated the State may or may not be prejudiced, depending on witness availability, particularly the veterinarian's availability.

{¶ 27} Chipman asserted in her motion that she did not understand the nature of the charges and that she had a complete defense to the charges. At the hearing on the motion to withdraw her plea, Chipman did not articulate what her defense would have been, although she generally asserted that she had never mistreated her dog. Rather, the hearing focused on whether Chipman had understood the nature of the charges and the plea proceedings as a whole. The State argued that Chipman simply had a change of heart.

{¶ 28} When asked if she had anything to say in support of her motion, Chipman was difficult to follow. She stated:

* * * Your Honor, on the eleventh day of July I finally got a hold of whatever

her name is and I talked to her and I told her, I will pay the veterinary bill. She never said yeah, no, or what but she called Mister Turner [defense counsel] and told him what I had said. If they had of done what I asked none of this would have been about. This would have all been over and if she is saying that I don't under, I don't understand it. I was in the impression when we was here back in November[4] that, what, that the no contest that they were going to go all the way back and have like a new trial. That, that's what I thought. You know what I'm talking about, I hope.

**{¶ 29}** The trial court told Chipman that it had listened to a recording of the October 24 plea hearing, and the court asked Chipman several follow-up questions. Chipman indicated that she did not understand that she had been in court in October for trial; she stated, "I was under the impression we was in there to try to get things straightened out." The trial court noted that, at the motion to withdraw hearing, Chipman seemed "very concerned about the possible restitution"; the court asked Chipman if that was the reason she wanted to withdraw her plea. Chipman responded, "No, I'm not, no." The trial court summarized for Chipman what she had heard on the recording of the plea hearing, and commented that "it appears that you [Chipman] had sufficient understanding of what was going on." The court also noted that Chipman had "seasoned" counsel who "interjected as much as he could to make sure that you understood."

---

[4] At the hearing on the motion to withdraw her plea, Chipman and the prosecutor incorrectly recalled that the plea hearing had been in November 2016. Upon further discussion between the parties and the court, defense counsel clarified that the November 2016 hearing related to the civil case and that the plea hearing had been in October 2016.

{¶ 30} The court found that it "[could not] say that you did not understand it [the plea hearing] because it appeared that you did. And from our conversation today I don't get an additional sense that you don't understand and so for that reason I am going to deny your motion to withdraw your plea." Chipman responded to the court, "And Your Honor I can't understand half of what you are saying. I know you know, I don't but I can't, it just don't grab what you're, what all you're saying." Upon further questioning by the court, Chipman indicated that she did not realize that the court had found her guilty on her no contest plea and that she "can't understand a lot of things that are said." The court told Chipman, "Okay and so what I'm saying is that your no contest plea that you entered in October is a good plea. I am not going to reverse it. I am not going to erase it. We move on from here."

{¶ 31} Whether Chipman actually understood the nature of the charges and plea hearing as a whole at the time of her plea is not entirely clear, and it is possible to interpret the proceedings multiple ways. Following the opportunity to speak with her attorney in a conference room, Chipman's statements during the plea hearing, on their face, expressed an understanding of what was occurring. And, Chipman signed the plea form and told the court, "I understand this now." The trial court concluded that Chipman did, in fact, understand what had happened during the plea hearing, and there is competent, credible evidence to support that conclusion. And while Chipman may have been confused after the fact, particularly given that she had concurrent criminal and civil cases regarding Chinook, the trial court could have reasonably concluded that Chipman offered no justifiable reason for withdrawing her plea. Accordingly, we cannot conclude that the trial court abused its discretion in denying Chipman's motion to withdraw her no contest plea.

**{¶ 32}** Chipman's second assignment of error is overruled.

### IV. Conclusion

**{¶ 33}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

HALL, P. J. and WELBAUM, J., concur.

Copies mailed to:

Stephanie L. Cook
John S. Pinard
Hon. Deirdre E. Logan