[Cite as *State v. Kennard*, 2018-Ohio-2752.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27681 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-615 |
| | : | |
| TRAVIS M. KENNARD | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 13th day of July, 2018.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

JOHNNA M. SHIA, Atty. Reg. No. 0067685, 130 W. Second Street, Suite 1624, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Travis M. Kennard pled guilty in the Montgomery County Court of Common Pleas to felonious assault (serious harm), in violation of R.C. 2903.11(A)(2), a felony of the second degree. The trial court sentenced him to two years in prison and ordered him to pay court costs. For the following reasons, the trial court's judgment will be affirmed.

## I. *Anders* Procedural History and Standard

{¶ 2} Kennard's original appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), indicating that he found "no error by the trial court prejudicial to the rights of appellant which may be argued to this court on appeal." Counsel raised two potential assignments of error, namely whether the trial court complied with Crim.R. 11 in accepting Kennard's plea and whether the court erred in not allowing him to withdraw his plea.

{¶ 3} Upon an initial review of the record, we noted that the record contained only the transcript of the sentencing hearing; no transcript of the plea hearing had been prepared. "It is axiomatic that the record in an *Anders* case must contain transcripts of all on-the-record proceedings in the trial court[;] [w]hen the record is incomplete, the filing of an *Anders* brief is not appropriate." *State v. Mayberry*, 2d Dist. Montgomery No. 27530, 2018-Ohio-2220, ¶ 4. Accordingly, we rejected the *Anders* brief, appointed new counsel, and indicated that new counsel should arrange for the preparation of the plea hearing transcript, which now has been done.

{¶ 4} On April 10, 2018, Kennard's current appellate counsel also filed an *Anders* brief. Counsel raises three potential assignments of error: (1) whether Kennard's plea was made knowingly, intelligently, and voluntarily, (2) whether the trial court complied

with Crim.R. 11, and (3) whether the trial court abused its discretion in denying Kennard's motion to withdraw his plea without a hearing. We informed Kennard that his appellate attorney had filed an *Anders* brief and provided him 60 days to file a pro se brief. No pro se brief has been filed.

{¶ 5} Pursuant to *Anders*, we must determine, "after a full examination of all the proceedings," whether the appeal is "wholly frivolous." *Anders*, 386 U.S. at 744; *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). An issue is not frivolous merely because the prosecution can be expected to present a strong argument in reply. *State v. Pullen*, 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 4. Rather, a frivolous appeal is one that presents issues lacking arguable merit, which means that, "on the facts and law involved, no responsible contention can be made that it offers a basis for reversal." *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 8, citing *Pullen* at ¶ 4. If we find that any issue -- whether presented by appellate counsel, presented by the defendant (if a pro se brief is filed), or found through an independent analysis -- is not wholly frivolous, we must appoint different appellate counsel to represent the defendant. *Id.* at ¶ 7.

## II. Factual and Procedural History

{¶ 6} According to the presentence investigation report (PSI), Kennard was the boyfriend of Emily Adams. For two days in late February 2017, Adams and Kennard had been arguing, and around 10:00 p.m. on February 28, Adams texted Kennard to return her car or she would "file charges" against him. Adams and Kennard texted back and forth, and Kennard came to Adams's residence at approximately 11:00 p.m. Kennard gave Adams her keys, and then punched her on the left side of her neck. Adams told

Kennard to leave and that "he was not going to hit her"; Kennard remained. Adams gave her infant child to her 12-year-old son, who took the infant into another room. After the children left the room, Kennard "flipped out" and began punching Adams repeatedly. The 12-year-old child went to a neighbor's house to report that Kennard was "beating up" his mother. The police were called to the scene; Kennard was gone when they arrived. The police officers noticed that Adams's face was covered in blood, her eyebrows and cheeks were heavily swollen, her eye sockets were collecting blood, and she had a "very noticeable cut on her left eyebrow." The officers also noticed that the "skin tone on [Adams's] upper chest and front neck line were red."

{¶ 7} The police began to look for Kennard. Within an hour of the assault, Kennard called the police and stated that he had been "jumped by five guys." Kennard indicated the neighborhood where he was located, but he would not meet with an officer. A K9 unit tracked Kennard, and he was arrested upon leaving an apartment building. Kennard asked the officer why Adams was "at home getting nothing and he was here." Kennard did not answer any questions or provide information about who had allegedly assaulted him.

{¶ 8} On March 10, 2017, Kennard was indicted for felonious assault, a felony of the second degree, and domestic violence, a first-degree misdemeanor. Kennard subsequently filed a motion to suppress any statements he had made on February 28, 2017, and the court scheduled a hearing on the motion.

{¶ 9} On June 8, 2017, the scheduled suppression hearing date, Kennard withdrew his motion to suppress and entered a guilty plea to felonious assault. In exchange for the plea, the domestic violence count was dismissed, and the parties agreed to a cap of

three years on any prison sentence. (The three-year cap is not included on the written plea form, but the parties agreed to that term at the plea hearing.) Defense counsel stated at the plea hearing, "We are entering a plea based on [a] recommendation of a cap of three years and the possibility of probation." After a plea colloquy with Kennard, the trial court accepted Kennard's guilty plea to felonious assault. Sentencing was scheduled for July 5, 2017.

{¶ 10} After the plea, Kennard's defense counsel developed a health issue, and on June 29, 2017, new defense counsel was appointed for Kennard. The sentencing hearing was continued several times at new defense counsel's request. One continuance was requested so that counsel could review the video-recording of the plea hearing; Kennard had indicated to his new counsel that he (Kennard) believed that he would be receiving community control.

{¶ 11} The sentencing hearing was held on July 19, 2017. At the beginning of the hearing, defense counsel told the court that he had "reviewed the video and audio from the plea and it's pretty evident in that video and audio that he [Kennard] was not guaranteed community control in this case by the Court at the time of the plea. He's indicated to myself that he was firmly led to believe based on conversations with * * * his prior attorney at the time of the plea, that it was pretty much a guaranty of community control. Based upon that he would ask the Court to permit him to withdraw his plea and have the matter set for trial." The trial court denied the motion, indicating that it had reviewed the plea hearing and found no promise had been made beyond the three-year cap.

{¶ 12} The trial court heard from defense counsel, Kennard, the prosecutor, and

Adams, following which it imposed two years in prison. Kennard appeals from his conviction.

### III. Kennard's Guilty Plea

{¶ 13} Crim.R. 11(C)(2) requires the court to address the defendant personally and (a) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that he or she understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses, and to require the State to prove guilt beyond a reasonable doubt at a trial at which he or she cannot be compelled to testify against himself or herself. *State v. Brown*, 2d Dist. Montgomery No. 21896, 2007-Ohio-6675, ¶ 3.

{¶ 14} The Supreme Court of Ohio has urged trial courts to literally comply with Crim.R. 11. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29. However, because Crim.R. 11(C)(2)(a) and (b) involve non-constitutional rights, the trial court need only substantially comply with those requirements. *E.g., State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Id.* In contrast, the trial court must strictly comply with Crim.R. 11(C)(2)(c), as it pertains to the waiver of federal constitutional rights.

*Clark* at ¶ 31.

**{¶ 15}** Furthermore, when non-constitutional rights are at issue, a defendant who challenges his plea on the basis that it was not knowingly, intelligently, and voluntarily made generally must show a prejudicial effect. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 17. Prejudice in this context means that the plea would otherwise not have been entered. *Id.* at ¶ 15.

**{¶ 16}** The trial court began its discussion with Kennard by asking if he had heard defense counsel's and the prosecutor's statements regarding the terms of the plea and whether he had the same understanding and intended to enter a guilty plea; Kennard responded, "Yes, sir." Kennard told the court that he was 30 years old, a United States citizen, and had received a degree in structural and pipe welding in 2008. When asked if he could read and understand the language on the plea form, Kennard stated, "I sure can." Kennard told the court that he had discussed the plea with his lawyer, that he was not under the influence of any drug, alcohol, or medication, and that he did not have any physical or mental problem that would prevent him from entering his plea.

**{¶ 17}** Upon further questioning, Kennard told the trial court that he was entering his plea voluntarily and of his own free will. He denied that he had been threatened or forced to plead. The court asked, "Other than a cap of three years and dismissal of the second count, have any promises been made to get you to plead?" Kennard responded, "No, sir."

**{¶ 18}** The prosecutor read the felonious assault charge, and Kennard stated that he understood it. The court told Kennard of the potential maximum penalties, including a $15,000 fine and a prison sentence of 2, 3, 4, 5, 6, 7, or 8 years in prison. The court

further stated that, "by a stipulation, you're going to get, if anything, a maximum of three years." Kennard expressed his understanding. The court told Kennard that he was eligible for community control; the court further stated that, if he were to get community control and violated it, he would face an 8-year sentence – not 3 years. The trial court notified Kennard that he would be required to serve 3 years of post-release control if he were sentenced to prison and of the consequences of violating post-release control.

{¶ 19} The trial court explained to Kennard that a guilty plea was a complete admission of guilt and that he would waive the right to appeal "any rulings made so far in your case." Kennard stated that he was pleading guilty because he was, in fact, guilty. The trial court explained the constitutional rights that Kennard was waiving by his plea, and Kennard stated that he understood that he was giving up those rights. Kennard indicated that he had no questions, and he entered a guilty plea to felonious assault. The trial court found that Kennard had entered his plea knowingly, intelligently, and voluntarily, and accepted the guilty plea.

{¶ 20} Upon review of the plea hearing transcript, we find no arguably meritorious claim that Kennard's plea was not entered knowingly, intelligently, and voluntarily. And, the record reflects that the trial court complied with Crim.R. 11 at the plea hearing. Accordingly, any argument that the trial court failed to comply with Crim.R. 11 would be frivolous.

### IV. Motion to Withdraw Plea

{¶ 21} At the beginning of the sentencing hearing, Kennard made an oral motion to withdraw his plea based on his belief that he would be receiving community control. Kennard had expressed this belief to his new defense counsel prior to the sentencing

hearing, which prompted counsel to review the video-recording of the plea hearing.

{¶ 22} It is unclear from the record whether Kennard was aware, prior to the sentencing hearing, that the court would be imposing two years in prison. When asked by the court if he had anything to say regarding sentencing, the prosecutor stated, "Nothing additional from the State, Your Honor, other than what the State's already provided the Court. The State would just ask the Court to go through with its originally planned sentence of two years." The prosecutor's response suggests that the trial court had informed the parties, prior to the sentencing hearing, of its intended sentence for Kennard.

{¶ 23} Whether Kennard was aware of his intended sentence at the time of his oral motion to withdraw his plea is relevant to whether his motion should be considered a presentence or postsentence motion, which are treated differently. When a motion to withdraw a plea is made before sentencing, but after learning of the imminent sentence to be imposed, the motion is considered to be filed after sentencing. *E.g., State v. Haney*, 2d Dist. Montgomery No. 25344, 2013-Ohio-1924, ¶ 10.

{¶ 24} Crim.R. 32.1 provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

> The distinction between pre-sentence and post-sentence motions to withdraw pleas of guilty or no contest indulges a presumption that post-sentence motions may be motivated by the desire to obtain relief from a sentence the movant believes is unduly harsh and was unexpected. The

presumption is nevertheless rebuttable by showing of a manifest injustice affecting the plea. 'A "manifest injustice" comprehends a fundamental flaw in the path of justice so extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him or her.' The movant has the burden to demonstrate that a manifest injustice occurred.

(Internal citations omitted.) *State v. Brooks*, 2d Dist. Montgomery No. 23385, 2010-Ohio-1682, ¶ 8.

{¶ 25} In contrast, under Crim.R. 32.1, a presentence motion to withdraw a guilty plea "should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). However, "[a] defendant does not have an absolute right to withdraw his plea, even if the motion is made prior to sentencing." *Id.*; *State v. Hess*, 2d Dist. Montgomery No. 24453, 2012-Ohio-961, ¶ 18.

{¶ 26} In reviewing a trial court's decision on a defendant's motion to withdraw his or her plea filed before sentencing, we apply the following nine factors: (1) whether the accused was represented by highly competent counsel, (2) whether the accused was given a full Crim.R. 11 hearing before entering the plea, (3) whether a full hearing was held on the motion, (4) whether the trial court gave full and fair consideration to the motion, (5) whether the motion was made within a reasonable time, (6) whether the motion sets out specific reasons for the withdrawal, (7) whether the accused understood the nature of the charges and possible penalties, (8) whether the accused was perhaps not guilty of or had a complete defense to the charge or charges, and (9) whether the state is prejudiced by withdrawal of the plea. *E.g., State v. Becraft*, 2017-Ohio-1464, 89 N.E.3d

218 (2d Dist.); *State v. Warrix*, 2d Dist. Montgomery No. 26556, 2015-Ohio-5390, ¶ 29.

{¶ 27} "In considering these factors, the trial court employs a balancing test; no single factor is dispositive." *Warrix* at ¶ 30, citing *State v. Preston*, 2d Dist. Montgomery No. 25393, 2013-Ohio-4404, ¶ 20. However, "[t]he ultimate question for the trial court is whether there is a 'reasonable and legitimate basis for the withdrawal of the plea.' " *Id.*, quoting *Xie*, 62 Ohio St.3d at 527. A change of heart or mistaken belief about the plea is not a reasonable basis requiring a trial court to permit the defendant to withdraw his or her plea. *State v. Maddickes*, 2d Dist. Clark No. 2013 CA 7, 2013-Ohio-4510, ¶ 15. However, in considering whether to allow withdrawal of the plea, it is not sufficient for the trial court to simply find that the Crim.R. 11 colloquy satisfied the requirements of that Rule and the United States and Ohio Constitutions; if it were, even a presentence plea could never be withdrawn. *Id.*

{¶ 28} It is within the sound discretion of the trial court to grant or deny a motion to withdraw a plea. *Xie* at 526.

{¶ 29} Regardless of whether Kennard's motion to withdraw his plea is construed as a presentence motion or a postsentence motion, we find that an appeal from the denial of his motion without a hearing is frivolous. Applying the more lenient presentence standard, there is nothing in the record to suggest that Kennard had a reasonable and legitimate basis to withdraw his plea. Kennard was represented by competent counsel and had a full Crim.R. 11 hearing where the terms of his plea were discussed; Kennard indicated that he understood the terms as described by defense counsel and the prosecutor. The trial court also informed Kennard of the possible penalties, including the possibility of a prison term, and the court made clear that any prison sentence would not

exceed three years. Kennard denied that he had received any promises "[o]ther than a cap of three years and dismissal of the second count."

{¶ 30} To the extent that Kennard's motion was based on a promise by his original defense counsel that he would receive community control, those statements are not reflected in the record. To the contrary, Kennard's original defense counsel had informed the trial court that Kennard was "entering a plea based on [a] recommendation of a cap of three years and the *possibility* of probation." (Emphasis added.) In overruling Kennard's motion, the trial court gave full consideration to the motion, indicating that it had reviewed the plea hearing and found no promises were made beyond the three-year cap.

{¶ 31} On the record before us, there is no non-frivolous argument that the trial court abused its discretion in denying Kennard's motion to withdraw his plea without a hearing.

### V. Independent Review

{¶ 32} We have conducted an independent review of the record, including the written transcripts and the presentence investigation report, and find no non-frivolous issues for appeal. Accordingly, the trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies mailed to:

Mathias H. Heck
Andrew T. French
Johnna M. Shia
Travis M. Kennard
Hon. Gregory F. Singer