[Cite as *State v. Ruley*, 2018-Ohio-3201.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2017-CA-10 |
| | : | |
| v. | : | Trial Court Case No. 2017-CRA-338 |
| | : | |
| MATTHEW RULEY | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of August, 2018.

. . . . . . . . . . .

JONATHAN B. FREEMAN, Atty. Reg. No. 0067683, 215 W. Main Street, Troy, Ohio
45373
    Attorney for Plaintiff-Appellee

JULIA B. PEPPO, Atty. Reg. No. 0037172, 117 S. Main Street, Suite 400, Dayton, Ohio
45422
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Matthew Ruley appeals from a judgment of the Miami County Municipal Court that sentenced him to 180 days of incarceration following his guilty plea to a first-degree misdemeanor count of drug possession and ordered him to pay costs. For the reasons that follow, the judgment of the trial court will be affirmed.

### Factual and Procedural Background

{¶ 2} On January 20, 2017, Ruley was dropped outside the Tipp City fire station in an unconscious state, apparently suffering from a drug overdose. Emergency medical services ["EMS"] personnel at the fire station revived Ruley by administering "numerous" doses of Narcan. One EMS crew member directed the responding Tipp City police officer to "a used syringe" that EMS personnel had removed from Ruley's pocket and "a small baggie with a white substance" found on the ground next to Ruley. Based on those items, Ruley was charged with possession of "suspected heroin" in violation of R.C. 2925.11(A), a felony of the fifth degree, and possession of drug abuse instruments in violation of R.C. 2925.12, a misdemeanor of the second degree.[1]

{¶ 3} Because Tipp City EMS immediately transported Ruley to a hospital for further treatment, he was notified of the charges against him via a summons to appear in the Miami County Municipal Court on February 7, 2017. Ruley personally appeared on that date and remained out of custody under the terms of an own-recognizance bond.

{¶ 4} On March 16, 2017, Ruley appeared in court without an attorney and entered a plea of guilty to a first-degree misdemeanor. The transcript of that proceeding includes

---

[1] Although the police report and certain trial court records indicate that Ruley was charged with possession of drug abuse instruments, the record on appeal does not include documents from Miami County Municipal Court Case No. 2017 CRA 339, which relate to that second charge.

the following dialogue between Ruley and the trial court:

JUDGE: * * * Mr. Ruley, you're charged, you're charged with Possession of Drugs, a felony of the fifth degree and that case comes on today for what we call a preliminary hearing and at that preliminary hearing the State is required to go forward with substantial, credible proof that the offense was probably committed and that you probably committed the offense. Do you understand that?

RULEY: Yes sir.

JUDGE: Okay. And you're also charged with Possession of Drug Abuse Instrument, a misdemeanor of the second degree. That is punishable by a maximum fine of $750.00 and ninety (90) days in jail, do you understand that?

RULEY: Um hum.

JUDGE: Now, it's my understanding that you've had a discussion with the prosecutor and the prosecutor has agreed to amend the felony five, Possession of Drugs, to a misdemeanor one Possession of Drugs, which is punishable by a maximum fine of $1,000.00 and six months in jail. Is that your understanding?

RULEY: Yes sir.

JUDGE: And then the agreement was that you'd plead to the Possession of Drugs and the Possession of a Drug Abuse Instrument. Is that your understanding?

RULEY: Uh, I was under the understanding that the drug abuse instrument

was getting dismissed.

JUDGE: That the what was?

RULEY: That the drug abuse instrument was getting dismissed.

JUDGE: You are correct, I misread. Okay. So, you're going to plead to the misdemeanor one Possession of Drugs, the drug abuse instrument's going to be dismissed. That is your understanding, correct?

RULEY: Yes.

JUDGE: Okay. And is that what you want to do today?

RULEY: Yes.

JUDGE: You're here without a lawyer?

RULEY: Yes.

JUDGE: You understand that you have a right to an attorney and that if you can't afford an attorney we'll appoint one for you?

RULEY: Yes.

JUDGE: Is it your desire to go ahead and enter a plea today without benefit of an attorney?

RULEY: Yes.

JUDGE: And I have to explain your other constitutional rights that you have with respect to these charges. You have the right to a speedy public trial to a court or to a jury, do you understand that?

RULEY: Yes.

JUDGE: You'd have the right to testify or not to testify in [sic] your own behalf, do you understand that?

RULEY: Yes sir.

JUDGE: You'd have the right to subpoena in witnesses to testify for you. You'd have the right to cross-examine State witnesses called against you, do you understand that?

RULEY: Yes.

JUDGE: And you'd have the right to make the State prove you guilty by proof beyond a reasonable doubt of each and every element of these offenses by proof beyond a reasonable doubt before a court or a jury could find you guilty, do you understand that?

RULEY: Yes.

JUDGE: Did you read and sign this white form?

RULEY: Yes.

JUDGE: Did you understand it?

RULEY: Yes.

JUDGE: You got any questions about it?

RULEY: No sir.

JUDGE: And what plea did you want to enter to that misdemeanor one Possession of Drugs?

RULEY: Uh, guilty, Your Honor.

{¶ 5} Following a brief discussion of Ruley's criminal record, his prior drug treatment history and efforts to "stay clean," and his duty to "[c]ooperate" as part of his plea agreement, the trial court determined that Ruley should return for sentencing after the completion of a presentence investigation. A copy of that PSI report is included in the

record on appeal, and it indicates several drug offense convictions and a prison sentence for possession.

{¶ 6} Although Ruley was scheduled to be sentenced on April 26, 2017, the trial court issued a bench warrant when Ruley failed to appear on that date. Ruley was apprehended and returned to court on May 24, 2017, both for sentencing on the drug possession charge and to enter a plea of not guilty on an unrelated theft charge in Miami County Municipal Court Case No. 2017 CRB 1585.[2] The transcript of the proceedings on that date reflects that a public defender appeared on Ruley's behalf as to Case No. 2017 CRB 1585, but Ruley spoke on his own behalf as to his prior failure to appear for sentencing as scheduled in Case No. 2017 CRA 338.[3] Ruley explained that he had been working in Charlottesville, Virginia and was not able to leave the jobsite in order to return for the April 26, 2017 sentencing. The following dialogue with the trial court then transpired:

JUDGE: Okay. Now, I understand that and in terms of the scope of this stuff that's really kinda water over the damn [sic] now so I'll accept what you have to say for its value but let's talk a little bit about your sentencing. What do you want me to know before I sentence you on this drug abuse, or possession of drug charge?

RULEY: Your Honor, I got out, when I got out of prison, they put me in the

---

[2] No other information about the theft case is available in the record on this appeal.

[3] We agree, as Ruley urges in his reply brief, that the record does not support the State's supposition that the unnamed public defender then present also was representing Ruley for purposes of sentencing on the drug possession offense in this case.

VOA.[4] I got out of the VOA, I made a mistake and I used. I OD'd and, I mean, that's what it was. I got charged for it. I mean, since then, I was working. I was trying to do what I was supposed to do and I mean, I mean, I want the opportunity to maybe get put on the Vivitrol shot and some supervision or something. I mean, I always get put in jail and released, put in jail and released and it's not, I mean, it doesn't do anything. I'm asking for some, you know, some help through the courts. Maybe the Vivitrol shot or something else, you know? * * *

* * *

RULEY:    * * * I mean I'm asking for your mercy and asking for help. You know, if you can release me or you know, if we can work something out as far as anything but staying in jail again. I mean, I don't know, I don't know.

* * *

RULEY: * * * I'm just hoping maybe you can, you know, give me a chance. Give me another chance.

JUDGE: Well, at this time, I'm not going to. I'm going to sentence you to costs and 180 days in jail.

**{¶ 7}** The trial court then entered a written judgment imposing the stated 180-day sentence, plus $187.00 in costs, with no fines, license suspension, or other terms specified. Ruley appeals from that judgment, setting forth four assignments of error.

### *Mootness*

---

[4] Presumably, the Volunteers of America treatment center.

**{¶ 8}** As a preliminary matter, we must decide whether Ruley's appeal presents a justiciable controversy for this Court to resolve. "Where a defendant, convicted of a criminal offense, has voluntarily paid the fine or completed the sentence for that offense, an appeal is moot when no evidence is offered from which an inference can be drawn that the defendant will suffer some collateral disability or loss of civil rights from such judgment or conviction." *State v. Wilson*, 41 Ohio St.2d 236, N.E.2d 236 (1975), paragraph one of the syllabus; *State v. Nared*, 2d Dist. Clark No. 2017-CA-3, 2017-Ohio-6999, ¶ 11. Indeed, "it is reversible error for an appellate court to consider the merits of an appeal that has become moot after the defendant has voluntarily satisfied the sentence." *Cleveland Hts. v. Lewis*, 129 Ohio St.3d 389, 2011-Ohio-2673, 953 N.E.2d 278, ¶ 18, citing *State v. Berndt*, 29 Ohio St.3d 3, 4, 504 N.E.2d 712 (1987). The Ohio Supreme Court has limited the holdings of *Wilson* and *Berndt* "to appeals from misdemeanor convictions in which the appellant has voluntarily completed the sentence and in which no collateral consequences resulted from the conviction, *Lewis* at ¶ 19, meaning that Ruley's appeal of his misdemeanor conviction in his case implicates mootness concerns.

**{¶ 9}** Acknowledging that he already has completed his 180-day sentence for the subject offense, Ruley nonetheless argues in his Fourth Assignment of Error[5] that this appeal is *not* moot because 1) his fines remain unpaid, 2) the expected suspension of his driver's license is a "collateral consequence[ ]" of his conviction, and 3) this is a matter of "first impression" regarding the conviction of a person who would be a "qualified

---

[5] Ruley's "Fourth Assignment of Error" more accurately would be termed an "issue presented for review," as the argument neither attributes a mistake to the trial court nor includes a "reference to the place in the record where each error is reflected," as required by App.R. 16(A)(3).

individual" immune from prosecution under Ohio's "911 Good Samaritan Law," codified at R.C. 2529.11(B)(2)(b). The State counters that all issues raised by Ruley's appeal in fact are moot because he has served his full sentence, he is not subject to any fines, license suspension or other "collateral consequences" of his conviction, and he is not a "qualified individual" for purposes of R.C. 2529.22(B)(2)(b)'s protection.

{¶ 10} The trial judge did not order Ruley's driver's license suspended as part of his sentence, and the version of R.C. 2925.11(E) applicable to this case does not require a license suspension. Similarly, despite Ruley's reference to unpaid "fines," the judgment entered by the trial court shows the amount of fines imposed to be zero. Nevertheless, the trial court did impose court costs, and nothing in the record suggests that Ruley has paid those costs. Unpaid court costs alone suffice to prevent a judgment from being moot, even if an appellant has completed his jail sentence. *See State v. Laster*, 2d Dist. Montgomery No. 25019, 2013-Ohio-621, ¶ 3, fn.1 ("Because the court costs remain unpaid, Laster's misdemeanor appeal is not moot * * *"); *Nared* at ¶ 12, citing *Laster*[6]. Accordingly, we agree with Ruley's argument that his appeal is not moot and proceed to address the merits of his First, Second and Third Assignments of Error.

### *Effectiveness of Waiver of Right to Counsel*

{¶ 11} Each of Ruley's first two assignments of error is premised on his assertion that the trial court's inquiry into Ruley's intention to proceed without an attorney was insufficient to constitute an effective waiver of his right to counsel. Ruley argues both that

---

[6] Significantly, the appellant in *Nared* was sentenced after the effective date of R.C. 2947.23(C), which provides that a trial court "retains jurisdiction to waive, suspend, or modify the payment of the costs of prosecution * * * at the time of sentencing or at any time thereafter." Despite Mr. Nared's apparent failure to seek a waiver of court costs from the trial court, this Court determined that his unpaid court costs presented an active controversy for purposes of appeal. *See Nared*, 2017-Ohio-6999, ¶ 6, ¶ 12

his waiver of that right was invalid (First Assignment of Error) and that the trial court erred by imposing the maximum jail sentence despite Ruley's invalid waiver of the right to counsel (Second Assignment of Error).

{¶ 12} The right to counsel extends to misdemeanor criminal cases that could result in the imposition of a jail sentence. *State v. Perdue*, 2d Dist. Montgomery No. 23151, 2010-Ohio-565, ¶ 33, citing, among others, *State v. Downie*, 183 Ohio App.3d 665, 2009-Ohio-4643, 918 N.E.2d 218, ¶ 17 (7th Dist.). An appellate court conducts an independent review to determine whether a defendant voluntarily, knowingly, and intelligently waived his right to counsel based on the totality of the circumstances. *Id.* at ¶ 43.

{¶ 13} "In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." *State v. Gibson*, 45 Ohio St.2d 366, 366, 345 N.E.2d 399 (1976), paragraph two of the syllabus. To be valid, a waiver of counsel "must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Id.* at 377, quoting *Von Moltke v. Gillies*, 332 U.S. 708, 723, 68 S.Ct. 316 (1948). Additionally, the defendant "should be made aware of the dangers and disadvantages of self-representation." *Perdue* at #44, quoting *State v. Gatewood,* 2d Dist. Clark No. 2008 CA 64, 2009-Ohio-5610, ¶ 33.

{¶ 14} After reviewing the transcript of Ruley's plea hearing in light of the totality of the circumstances presented by this case, we conclude that Ruley's waiver was effective

to relinquish his right to counsel. The trial judge informed Ruley of his constitutional rights, including not only the rights to an attorney and to have an attorney appointed if unable to afford one, but also the rights to require the State to prove beyond a reasonable doubt all elements of the offense charged, to a speedy trial, to a jury, to testify or not testify on his own behalf, and to subpoena and cross-examine witnesses. The judge also accurately advised Ruley that the misdemeanor possession charge to which he was pleading guilty was "punishable by a maximum fine of $1,000.00 and six months in jail." In addition, the "white paper" to which the judge referred,[7] and which Ruley signed, confirmed Ruley's understanding of the nature and elements of the offense charged, the maximum penalty for that offense, his applicable rights as enumerated on that document, and his knowing and voluntary waiver of his right to counsel. Ruley also orally confirmed his understanding of his rights and his intent to waive counsel.

{¶ 15} Ruley faults the trial court for not asking him whether he was under the influence of drugs at the time of his plea and for not advising him that he "had a defense" under R.C. 2925.11(B)(2)(b) to the offense charged. Neither omission undermines the effectiveness of Ruley's waiver of the right to counsel.

{¶ 16} Ruley does not assert that his faculties in fact were impaired during the plea proceeding, and his statements on the record at that time belie any implication that he may have been unable to understand that proceeding. Absent corroborating evidence, a guilty plea will be not invalidated based merely on an appellant's suggestion "that he may have been under the influence of drugs or medication at the time of his plea." *See State v.*

---

[7] Ruley's brief confirms that the "white paper" so referenced is the document captioned "Plea of Guilty or No Contest" and appearing as Document #10 in the "Summary of Docket and Journal Entries" included in the appellate record.

*Brown*, 2d Dist. Montgomery No. 21896, 2007-Ohio-6675, #8, #15-16. Here, the record is devoid of evidence of any possible harm resulting from the omission of a question about the influence of drugs.

{¶ 17} As to Ruley's other criticism of the trial court's waiver inquiry, we conclude below that Ruley did *not* have a viable defense in the form of R.C. 2925.11(B)(2)(b), because he was not eligible for the protection provided by the statute. As a result, no constitutional concern is implicated by the trial court's failure to inform Ruley of that invalid defense.

{¶ 18} Ruley's First and Second Assignments of Error therefore are overruled.

### *"Qualified Individual" under R.C. 2925.11(B)(2)(b)*

{¶ 19} Ruley's Third Assignment of Error contends that the trial court's acceptance of his uncounseled guilty plea "was reversible error because the charge was barred from prosecution" due to Ruley's status as "a 'qualified individual' under" R.C. 2925.11(B)(2). After reviewing the record, we conclude that Ruley was not a "qualified individual" protected under R.C. 2925.11(B)(2)(b) from conviction for the subject drug possession offense. That statute provides in pertinent part as follows:

(b) Subject to division (B)(2)(f) of this section, a qualified individual shall not be arrested, charged, prosecuted, convicted, or penalized pursuant to this chapter for a minor drug possession offense *if all of the following apply*:

(i) The evidence of the obtaining, possession, or use of the controlled substance or controlled substance analog that would be the basis of the offense was obtained as a result of the qualified individual seeking the medical assistance or experiencing an overdose and

needing medical assistance.

(ii) Subject to division (B)(2)(g) of this section, *within thirty days after seeking or obtaining the medical assistance, the qualified individual seeks and obtains a screening and receives a referral for treatment from a community addiction services provider or a properly credentialed addiction treatment professional.*

(iii) Subject to division (B)(2)(g) of this section, the qualified individual who obtains a screening and receives a referral for treatment under division (B)(2)(b)(ii) of this section, upon the request of any prosecuting attorney, submits documentation to the prosecuting attorney that verifies that the qualified individual satisfied the requirements of that division. The documentation shall be limited to the date and time of the screening obtained and referral received.

(Emphasis added.)

{¶ 20} R.C. 2925.11(B)(2)(a) defines the relevant terms above as follows:

(iv) "Minor drug possession offense" means a violation of this section that is a misdemeanor or a felony of the fifth degree.

* * *

(viii) "Qualified individual" means a person who is not on community control or post-release control and is a person acting in good faith who seeks or obtains medical assistance for another person who is experiencing a drug overdose, a person who experiences a drug overdose and who seeks medical assistance for that overdose, or a person who is the subject of

another person seeking or obtaining medical assistance for that overdose as described in division (B)(2)(b) of this section.

(ix) "Seek or obtain medical assistance" includes, but is not limited to making a 9-1-1 call, contacting in person or by telephone call an on-duty peace officer, or transporting or presenting a person to a health care facility.

**{¶ 21}** This Court previously determined that failure to comply with the 30-day limit that R.C. 2925.11(B)(2)(b)(ii) sets for a "qualified individual" to "seek[ ] and obtain[ ] a screening and receive[ ] a referral for treatment" renders that individual ineligible for the statute's protection from arrest, prosecution and conviction. *State v. Melms*, 2d Dist. Montgomery No. 27685, 2018-Ohio-1947. In the particular facts of *Melms*, we determined that "the clear and unambiguous 30-day window set forth by the legislature" operates to deny R.C. 2925.11(B)(2)(b) immunity even to an otherwise qualified individual who was incarcerated throughout the 30 days after he received medical assistance for an opiate overdose. *Id.* at ¶ 4, ¶ 35. Ruley, who was not in custody throughout the month following his overdose, had no such arguable impediment to his ability to seek drug treatment.

**{¶ 22}** The record reflects that Ruley was prosecuted for a misdemeanor drug offense based on evidence obtained as a consequence of medical assistance rendered while he was experiencing an opiate overdose. While Ruley thus falls into the category of persons whom the statute was designed to protect, *see* R.C. 2925.11(B)(2)(b)(i), Ruley did not satisfy R.C. 2925.11(B)(2)(b)(ii)'s additional requirement that he "seek[ ] and obtain[ ] a screening and receive[ ] a referral for treatment" within 30 days after "obtaining the medical assistance" that presumably saved his life. He therefore is not immune from prosecution under the "clear and unambiguous" language of R.C. 2925.11(B)(2)(b)(ii).

*See Melms* at ¶ 35.

**{¶ 23}** Without acknowledging that he failed to do so within the 30-day limit set by statute, Ruley asserts that he advised the trial court that "he needed help with his opiate addiction" at "both his preliminary hearing and his sentencing hearing." While the transcript of his May 24, 2017 sentencing hearing does record Ruley's expression of interest in a drug treatment option at that time, that request came more than four months after he was revived from his January 20, 2017 overdose. The transcript of Ruley's March 16, 2017 plea proceeding is far less clear as to whether Ruley can be said to have conveyed an affirmative request for a referral to drug treatment on that date, but even a request made at that time would have occurred beyond the 30-day window permitted under R.C. 2925.11(B)(2)(b)(ii).

**{¶ 24}** Notwithstanding this Court's concerns, as expressed within the *Melms* opinion, about the consequences of that 30-day limit, we are bound to apply the applicable statute as enacted. *See Melms* at ¶ 2, ¶ 35. Because the terms of R.C. 2925.11(B)(2)(b) do not insulate Ruley from prosecution for the minor drug possession offense that arose from the substance found near his person while he was being treated for a drug overdose, we conclude that the trial court did not err by accepting Ruley's guilty plea to that offense. His Third Assignment of Error therefore is overruled.

**{¶ 25}** For the foregoing reasons, Ruley's Assignments of Error are overruled, and the judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies mailed to:

Jonathan B. Freeman
Julia B. Peppo
Hon. Gary A. Nasal