[Cite as *State v. Simkins*, 2019-Ohio-4369.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27830 |
| | : | |
| v. | : | Trial Court Case No. 2017-TRC-8248 |
| | : | |
| RICHARD L. SIMKINS, III | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Municipal Court) |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 25th day of October, 2019.

. . . . . . . . . .

STEPHANIE L. COOK, Atty. Reg. No. 0067101, City of Dayton Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

MARCY A. VONDERWELL, Atty. Reg. No. 0078311, P.O. Box 24805, Dayton, Ohio 45424
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Richard L. Simkins III appeals from a judgment of the Dayton Municipal Court that found him guilty and sentenced him to a 180-day suspended jail term following his no-contest plea to a first-degree misdemeanor charge of having physical control of a vehicle while under the influence. We affirm.

## I. Facts and Procedural History

{¶ 2} On September 13, 2017, Simkins was involved in a single-vehicle accident while driving his motorcycle in Dayton, Ohio. Dayton Police Officers found Simkins lying in the grass a few feet away from his motorcycle. Simkins twice told the officers that he had a "good buzz." The officers noted that Simkins's face was flushed, his eyes were bloodshot, and his speech was slurred. Simkins was cooperative at times and then would suddenly became belligerent. He was unable to stand up without the assistance of the two medics who arrived on scene. He was eventually transported to Grandview Hospital, where he was treated and released. During treatment, blood drawn for medical purposes showed a blood-alcohol level well over the legal limit.

{¶ 3} Simkins was charged with one count of operating a motor vehicle under the influence of alcohol/drugs, a first-degree misdemeanor; one count of driving under suspension, a first-degree misdemeanor; one count of no license, a first-degree misdemeanor; and one count of failure to control his motor vehicle, a minor misdemeanor. On September 18, Simkins was arraigned in the Dayton Municipal Court and pleaded not guilty. At a pretrial hearing on October 12, Simkins asked for a continuance in order to speak to an attorney. The matter was rescheduled for a second pretrial hearing at the end of the month. A few days before that hearing, Simkins filed pro se a written jury demand. The case was scheduled for jury trial in mid-November.

{¶ 4} On November 8, Simkins appeared in court and, with the help of an attorney acting as a "friend of the court," pleaded no-contest to the amended charge of having physical control of a vehicle while under the influence, a violation of R.C. 4511.194 and a first-degree misdemeanor; the other traffic offenses were to be dismissed. Before Simkins entered his plea, the attorney, in open court, explained the rights that Simkins would be giving up. Simkins said that he understood and signed a waiver-of-rights and no-contest plea form. The trial court accepted Simkins's plea, and then a statement of facts regarding the allegations against him was read into the record. The court found Simkins guilty, imposed a 180-day suspended jail sentence, and ordered him to submit to drug and alcohol testing. The court also ordered Simkins to pay court costs but did not specify any fines, license suspension, or other terms.

{¶ 5} A week later, on November 13, Simkins filed pro se a "Notice of Appeal or Request for Restart." The trial court took the motion as a motion to withdraw the no-contest plea and held a hearing the same day. After hearing from Simkins and the "friend of the court," the court overruled the motion to withdraw.

{¶ 6} Simkins appeals.

## II. Analysis

{¶ 7} Simkins assigns two errors to the trial court. The first argues that the court erred by accepting his no-contest plea, and the second argues that the court erred by not permitting him to withdraw the plea.

### A. Accepting the no-contest plea

{¶ 8} The first assignment of error alleges:

THE TRIAL COURT ERRED IN ACCEPTING APPELLANT'S NO

CONTEST PLEA BECAUSE IT WAS NOT ENTERED KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY.

*Applicable law*

**{¶ 9}** Simkins argues that the trial court failed to comply with Crim.R. 11, which governs pleas in criminal cases. But in traffic cases, the corresponding Ohio Traffic Rules apply. *See* Crim.R. 1(C)(3) (the Criminal Rules, "to the extent that specific procedure is provided by other rules of the Supreme Court shall not apply to procedure * * * in cases covered by the Uniform Traffic Rules"); Traf.R. 1(A) (the Traffic Rules apply in traffic cases); Traf.R. 2(A) (defining "traffic case" as "any proceeding, other than a proceeding resulting from a felony indictment, that involves one or more violations of a law, ordinance, or regulation governing the operation and use of vehicles"). *See also State v. Watkins*, 99 Ohio St.3d 12, 2003-Ohio-2419, 788 N.E.2d 635, ¶ 10 ("Since the charges brought against appellant involved violations of traffic ordinances, the Traffic Rules applied to his case."). The charges brought against Simkins were traffic offenses that did not involve a felony, and the charge to which he ultimately pleaded involves a traffic ordinance, so the Traffic Rules applied in this case.

*Compliance with Traf.R. 10*

**{¶ 10}** Traf.R. 10 governs pleas in traffic cases, and Traf.R. 10(D) specifically applies to misdemeanor cases involving petty offenses. It is not disputed that Simkins's offense was a petty offense. *See* Traf.R. 2(D) (defining "petty offense" as "an offense for which the penalty prescribed by law includes confinement for six months or less"). This rule provides that "the court may refuse to accept a plea of guilty or no contest and shall not accept such pleas without first informing the defendant of the effect of the plea of

guilty, no contest, and not guilty." Traf.R. 10(D).

{¶ 11} Simkins argues that the trial court failed to fully inform him of the effect of his no-contest plea. The Ohio Supreme Court has said that the effect of a no-contest plea is defined in Traf.R. 10(B)(2). *Watkins* at ¶ 13; *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, ¶ 23. Division (B)(2) provides that "[t]he plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the complaint and such plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding."

{¶ 12} The state argues that Simkins was fully informed about the effect of his no-contest plea in the plea form, which he signed. The signed plea form stated: "A plea of No Contest is not an admission of my guilt, but is an admission of the truth of the facts alleged against me in the complaint and permits the court to make a finding of guilty or not guilty. This plea/admission cannot be used against me in any future civil or criminal proceedings." The plea of no contest and waiver of rights form, which Simkins signed, stated: "I understand the above rights and points of law, including my right to counsel and the effect of my plea. I knowingly, intelligently, and voluntarily waive my rights and willingly wish to enter a plea of guilty or no contest. I understand the effect of my plea if I am not a citizen. I hereby answer the following question concerning citizenship and enter my plea knowingly, intelligently, and voluntarily." Simkins signed the plea form in open court, acknowledging his understanding of those rights. We agree with the state that the plea form informed Simkins of the effect of a no-contest plea, as defined in Traf.R. 10(B)(2).

{¶ 13} The remaining question is whether the trial court was required to inform Simkins of the effect personally, that is, orally. The answer is no. "The Ohio Supreme

Court has not required the trial court to orally inform a defendant of the effect of his or her plea." *State v. Chipman*, 2d Dist. Montgomery No. 27484, 2018-Ohio-33, ¶ 13, citing *Jones* at ¶ 51 ("Whether orally or in writing, a trial court must inform the defendant of the appropriate language under Crim.R. 11(B) before accepting a plea."). Unlike in cases involving serious offenses, the trial court need not personally address the defendant and determine that the defendant understands the nature of the charge and is entering the plea voluntarily. *See Watkins* at ¶ 26, quoting Crim.R. 11(C)(2)(a) ("In all cases, the judge must inform the defendant of the effect of his plea. In felony cases and misdemeanor cases involving serious offenses, a judge must also 'addres[s] the defendant personally' and 'determin[e] that the defendant is making the plea voluntarily.' ").

{¶ 14} We conclude, therefore, that the trial court complied with the requirements of Traf.R. 10 in accepting Simkins's no-contest plea.

*Waiver of the right to counsel*

{¶ 15} A harder question is whether Simkins effectively waived his right to counsel. The right to counsel extends to misdemeanor criminal cases that could result in the imposition of a jail sentence. *State v. Perdue*, 2d Dist. Montgomery No. 23151, 2010-Ohio-565, ¶ 33. We conduct a de novo review to determine, based on the totality of the circumstances, whether a defendant voluntarily, knowingly, and intelligently waived his right to counsel. *Id.* at ¶ 43.

{¶ 16} "In order to establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right." *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph two of the syllabus. To be valid, a waiver of counsel " 'must be made

with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.' " *Id.* at 377, quoting *Von Moltke v. Gillies*, 332 U.S. 708, 723, 68 S.Ct. 316, 92 L.Ed.2d 309 (1948). Also, the defendant "should be made aware of the dangers and disadvantages of self-representation." *Perdue* at ¶ 44, quoting *State v. Gatewood*, 2d Dist. Clark No. 2008 CA 64, 2009-Ohio-5610, ¶ 36.

{¶ 17} The transcript of the plea hearing includes this exchange among Simkins, the "friend of the court" who helped Simkins plead, and the trial court:

The state: * * * It's my understanding that Mr. Simkins has come in and had an opportunity to speak with Mr. Grove as a friend of the court. I have discussed an offer that I communicated to Mr. Grove and I believe he communicated that information to Mr. Simkins and that Mr. Simkins would like to avail himself of that offer. I believe that Mr. Grove is helping Mr. Simkins execute a waiver of trial. Furthermore, it's my understanding he would like to enter a no contest plea to the amended charge of physical control. In exchange for a plea to that amended charge the remaining traffic charges would be dismissed and when the court is ready I can go ahead and make a statement of facts on the record.

Mr. Grove: That's a correct statement your honor. Just for the record I am acting solely as a friend of the court in communicating the offer to Mr. Simkins who is representing himself. He has before him a waiver of his jury and a plea form indicating that he is pleading no contest to the amended

charge. I believe that is correct is it not Mr. Simkins?

[Simkins]: That sounds pretty close to the [sic]

Mr. Grove: Is there anything which I have not stated which you believe is part of this discussion?

[Simkins]: No I'm just trying to get this whole thing behind me and get my self (inaudible).

\* \* \*

The court: \* \* \* We just want to make sure that you want to waive the jury and you understand your rights?

[Simkins]: I do want to waive the jury and I want to waive whatever I have to waive to get this behind me.

The court: Ok there's two forms. Has he executed them yet Mr. Grove?

Mr. Grove: No he has not. This is the waiver of your jury which you have to execute first in order to take care of this matter and you have to sign over here where it says defendant.

The court: Ok

Mr. Grove: And that is your signature sir?

[Simkins]: That is. Would you like to see my I.D.?

Mr. Grove: No—and this is a plea form Mr. Simkins. This indicates that you have the right to an attorney if you are unable to afford one. That has not yet been provided to you. Thus far you have operated on your own in a pro se manner. You have a right to know the nature of the charges

against you. You have already been told of those and the possible penalties.

[Simkins]: Yes sir.

Mr. Grove: You have a right to bail. That's m[oot] because you are outside now of a jail. You have a right to have it tried by a judge or jury. You know that because you executed that right.

[Simkins]: I waived that right.

Mr. Grove: Right. You have the right to present witnesses and (inaudible)

[Simkins]: (inaudible)

Mr. Grove: You have a right to question witnesses who testify against you. You have the right not to testify if a mistake cannot make you do so [sic]. The state must prove all the elements of the offense and a plea of no contest, which is number 11, is not an admission of guilt but is an admission of the truth of the facts alleged against me in the complaint and permits the court to make a finding of guilty or not guilty. This plea cannot be used against you in any future civil or criminal proceedings. Do you understand those right?

[Simkins]: I do understand that sir.

* * *

Mr. Grove: Then you need to execute that if you are going to go forward with a no contest plea.

[Simkins]: I am sir.

The court: Ok then let the record reflect that the jury waiver has been executed as well as a waiver of rights form and then Mr. Simkins it's my understanding at this time to the charge has been amended by the prosecutor with the dismissal of three other charges you would like to enter a plea of no contest to the remaining amended charge of physical control correct?

[Simkins]: That is correct sir.

(Tr. 15-18.)

{¶ 18} Based on the transcript, the totality of the circumstances in this case leads us to conclude that Simkins effectively waived his right to counsel. The trial court listened as Grove informed Simkins of his constitutional right to an attorney if he were unable to afford one, as well as the rights to require the state to prove all elements of the offense charged, to a trial by judge or jury, to testify or not testify on his own behalf, and to cross-examine witnesses. Grove told Simkins that he had a right to know the nature of the charges against him and noted that Simkins had already been told of the possible penalties. Simkins agreed with all this. Simkins then signed the plea and waiver-of-rights form, referred to by Grove and the trial court, enumerating each constitutional right that Simkins would give up by pleading no-contest, the first being "[t]he right to an attorney and the right to have an attorney appointed for me if I am unable to afford one." Below the list of rights is this sentence: "I UNDERSTAND THE ABOVE RIGHTS AND POINTS OF LAW, INCLUDING MY RIGHT TO COUNSEL AND THE EFFECT OF MY PLEA." By signing the form, Simkins confirmed his understanding of the nature and elements of the offense charged, the maximum penalty for that offense, his applicable rights as

enumerated on the form, and his knowing and voluntary waiver of his right to counsel. Simkins also orally confirmed his understanding of his rights and his intent to waive them all: "I want to waive whatever I have to waive to get this behind me." (Tr. 16.)

{¶ 19} We found an effective waiver of the right to counsel in similar circumstances in *State v. Ruley*, 2d Dist. Miami No. 2017-CA-10, 2018-Ohio-3201. In that case, the defendant pleaded guilty to a first-degree misdemeanor count of drug possession and was sentenced to 180 days in jail and ordered to pay costs. Based on the transcript of the plea hearing, we concluded that the defendant waived his right to counsel:

> The trial judge informed [the defendant] of his constitutional rights, including not only the rights to an attorney and to have an attorney appointed if unable to afford one, but also the rights to require the State to prove beyond a reasonable doubt all elements of the offense charged, to a speedy trial, to a jury, to testify or not testify on his own behalf, and to subpoena and cross-examine witnesses. The judge also accurately advised [the defendant] that the misdemeanor possession charge to which he was pleading guilty was "punishable by a maximum fine of $1,000.00 and six months in jail." In addition, the [plea form] to which the judge referred, and which [the defendant] signed, confirmed [the defendant]'s understanding of the nature and elements of the offense charged, the maximum penalty for that offense, his applicable rights as enumerated on that document, and his knowing and voluntary waiver of his right to counsel. [The defendant] also orally confirmed his understanding of his rights and his intent to waive counsel.

*Ruley* at ¶ 14.

<em>Simkins's mental state and competency</em>

**{¶ 20}** Simkins also contends that the trial court failed to inquire into his mental state and his competency to stand trial. He suggests that the trial court's failure to sua sponte order a competency hearing rendered his plea invalid.

**{¶ 21}** "A guilty plea that is not knowing, intelligent, and voluntary violates the Ohio and United States Constitutions. It is the trial court's duty, therefore, to ensure that a defendant 'has a full understanding of what the plea connotes and of its consequence.' " (Citations omitted.) *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 40 (2016), quoting *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). "A plea may be involuntary if 'the accused does not understand the nature of the constitutional protections he is waiving * * * or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt.' " *Id.* at ¶ 42, quoting *Henderson v. Morgan*, 426 U.S. 637, 645, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), fn. 13. To determine whether a plea colloquy is sufficient to ensure that a defendant entered a voluntary and knowing plea, we examine the totality of the circumstances. *See id.* at ¶ 43.

**{¶ 22}** Here, according to Simkins, the record contains considerable evidence showing that he expressed doubts as to his own competency, displayed evidence of irrational behavior, and was agitated to the point of making the prosecutor uncomfortable discussing matters off the record. In addition, there was medical evidence of head trauma entered into the record by the state. The record shows that on September 13, 2017, Simkins was involved in a motorcycle accident resulting in head trauma. At the pretrial

hearing on October 12, Simkins told the court: "I really don't understand what's going on. I've had head trauma. In my last hearing, I was very confused for the whole thing." (Tr. 7.) Simkins states that he appeared to be confused when questioned by the court and in understanding a simple continuance. At the plea-withdrawal hearing, on November 13, Simkins told the court that the "friend of the court," the attorney who helped him plead no contest, threatened him with jail time if he did not plead. And Simkins said that he had head trauma and that he did not understand the proceedings: "Whatever happened here I needed an attorney for it. I do not function mentally. My brain is gone." (*Id.* at 27-28.)

{¶ 23} But during the pretrial hearing, Simkins, using correct legal terms, expressed clear concern about not waiving any of his rights. Despite his claim that he did not understand what was transpiring during this pretrial, when he was told that he would have to sign a continuance in order to allow him the opportunity to speak to an attorney, Simkins was very concerned about who would be charged for the continuance, saying, "ok, to be clear it's the prosecutor requesting the continuance." (*Id.* at 7.) And when the court explained the possible penalties and legal ramifications associated with an OVI offense, Simkins clearly indicated that he understood, saying, "Yeah I already received that for a refusal." (*Id.* at 8.) Also, Simkins filed pro se a written demand for discovery and a jury demand. Finally, nothing at the November 8 plea hearing suggests that Simkins did not enter his no-contest plea knowingly, intelligently, and voluntarily. There is no evidence that the injury he sustained in the motorcycle accident caused a traumatic brain injury, and we see no indication that the alleged head trauma affected Simkins's judgment. His responses to questions were appropriate. We note that because Simkins's statements at the plea-withdrawal hearing occurred after the court had accepted his plea,

those statements are not relevant to the question of his mental state at the time he pleaded.

{¶ 24} The record does not indicate that Simkins failed to understand the proceedings. During the plea colloquy, he answered the court's questions appropriately and exhibited no behavior that was outrageous, irrational, or confused. In short, there is little evidence in the record showing that Simkins was not in full possession of his faculties at the plea hearing. Under these circumstances and considering the totality of the evidence, we conclude that Simkins entered his plea voluntarily and knowingly.

{¶ 25} The first assignment of error is overruled.

## B. Withdrawing the no-contest plea

{¶ 26} The second assignment of error alleges:

THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED CRIMINAL RULE 31.1 WHEN IT FAILED TO ALLOW APPELLANT TO WITHDRAW HIS GUILTY PLEA.

{¶ 27} Crim.R. 32.1 provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." "A defendant moving for a postsentence withdrawal of a guilty plea has the burden of establishing the existence of manifest injustice." *State v. Yapp*, 2015-Ohio-1654, 32 N.E.3d 996, ¶ 8 (8th Dist.), citing *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus. "A manifest injustice is a clear or openly unjust act; an extraordinary and fundamental flaw in the plea proceeding. Manifest injustice comprehends a fundamental flaw in the path of

justice so extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him or her." (Citations omitted.) *Id.*

{¶ 28} "Appellate courts review trial court decisions on motions to withdraw pleas for abuse of discretion." *State v. Becraft*, 2017-Ohio-1464, 89 N.E.3d 218, ¶ 44 (2d Dist.), citing *Smith* at paragraph two of the syllabus. The good faith, credibility, and weight of the movant's assertions in support of the motion are matters to be resolved by the trial court. *Id.*

{¶ 29} On appeal, Simkins bases his argument for withdrawal on the reasons given in the first assignment of error for why it was error for the trial court to accept his no-contest plea in the first place. But his motion to withdraw is based on alleged coercion by Grove, the "friend of the court." Simkins alleges that Grove yelled at him and told him that he would go to jail if he did not plead. At the plea-withdrawal hearing, Grove told the trial court that he did nothing improper:

> When I was here with the defendant acting as a friend of the court * * *. I simply—for the record I stated on the record that I was not his attorney and I was simply communicating an offer that had been extended by the prosecution where he would not in all probability go anywhere near a jail if he chose to accept the offer. * * * The alternative was simply that I would request the judge to appoint a lawyer and that he could come back at a later time. When I explained to him his options he elected to exercise the option in favor of a no contest plea to the charge of physical control, which as I tried to explain to him carries no points, no mandatory jail sentence, and the

court in accordance with practice that is pretty much standard here imposed a little more than court costs and that was it. Now I don't know what I have done wrong except that I was going to give him his options or if he chose to exercise his right to a trial and the matter was already set for a jury trial the following week and a day later I would simply ask the court to appoint. That's what I did.

(Tr. 25-26.) Simkins responded:

[Simkins]: My point is that it was highly improper for him to offer me any deal at all. For him to attempt to offer me a deal at that point was wrong.

The court: It's my understanding he didn't offer you [sic]

[Simkins]: He did. He took me back in that room and threatened me with jail time if I didn't plead out.

The court: He has no power to offer anything. All he is doing is communicating the offer from the prosecution to you.

[Simkins]: Sir I don't really understand. I've had head trauma and I get very confused and I have the hand written motions. If you want to review the record he told me I couldn't have a continuance. My head was ringing during the proceedings. I was withdrawing from my pain medication. He interrupted me when I—he read something about a continuance and I tried to say wait a minute you told me I couldn't have one. He interrupted me and yelled at me. * * *

(Tr. 26-27.)

**{¶ 30}** There is no evidence other than the statements at the hearing made by

Simkins and Grove. Nothing in the record corroborates Simkins's allegations. We defer to the trial court's credibility determinations, and we see no manifest injustice that would support withdrawal. We conclude that the court did not abuse its discretion by denying withdrawal of Simkins's no-contest plea.

{¶ 31} The second assignment of error is overruled.

### III. Conclusion

{¶ 32} We have overruled both of the assignments of error presented. Therefore the trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, J., concurs.

FROELICH, J., dissents.

{¶ 33} As noted by the majority opinion, the right to counsel applies in misdemeanor cases, including cases involving petty offenses, that result in imprisonment. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979). The rule extends to cases involving a suspended sentence, capable of subsequent revocation, resulting in incarceration. *Alabama v. Shelton*, 535 U.S. 654, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002); *State v. Owens*, 2d Dist. Montgomery No. 23150, 2010-Ohio-564, ¶ 18.

{¶ 34} A criminal defendant has the independent constitutional right of self-representation. *Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 23. Thus, a defendant may proceed to defend himself without the benefit of counsel when he

or she voluntarily, knowingly, and intelligently elects to do so. *State v. Youngblood*, 2d Dist. Clark No. 05CA0087, 2006-Ohio-3853, ¶ 10, citing *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976).

**{¶ 35}** However, "[c]ourts are to indulge every reasonable presumption against the waiver of a fundamental constitutional right, including the right to counsel." *State v. Dyer*, 117 Ohio App.3d 92, 95, 689 N.E.2d 1034 (2d Dist.1996); *State v. Street*, 2d Dist. Montgomery No. 26501, 2015-Ohio-2789, ¶ 35. The waiver must affirmatively appear in the record, and the State bears the burden of overcoming presumptions against a valid waiver. *Dyer* at 95, *Street* at ¶ 35. Crim.R. 44(C) requires a waiver of counsel to be "in open court and the advice and waiver shall be recorded as provided in Rule 22."

**{¶ 36}** In this case, Simkins was arraigned on September 18, 2017. At that time, the trial court informed him, among other things, that he had a right to an attorney and that one would be appointed for him if he could not afford one. The court entered a not guilty plea on Simkins's behalf and set a pretrial conference.

**{¶ 37}** The pretrial conference was held on October 12, 2017. The prosecutor told the court that he had spoken with Mr. Grove of the Public Defender's Office, and Grove had said that Simkins had not been to that office. The prosecutor indicated that the matter involved "an OVI so it is something that he [Simkins] probably should have an attorney on." The trial court asked Simkins if he had money for an attorney, and Simkins responded that he did not. The court replied, "Ok we need to get you over to the Public Defender's Office then." The court told Simkins where that office was located and asked if Simkins knew where it was. The court further stated:

We are going to give you a reset for pretrial and we are going to refer you

over to the Public Defender. All you have to do is go over there in person. They are going to ask you a few simple financial questions and once you get that worked out with them they will probably end up representing you and then we will have you back for another pretrial.

{¶ 38} At that juncture, Simkins asked whether the State was requesting the continuance. Simkins stated that he "really [didn't] understand what's going on. I've had head trauma. In my last hearing I was very confused for the whole thing." The court explained the charge and the potential punishment Simkins faced. The court continued: "There's a lot of different legal ramifications that go along with it. That's why if you don't understand all this we are trying to get you over to the Public Defender's Office so you can sit down with a licensed practicing attorney who works in this courtroom every day to try and explain it all to you and what your options are." Simkins thanked the court and expressed that he did not want to waive any of his rights. At the conclusion of this pretrial conference, the court told Simkins to go the Public Defender's Office "today or tomorrow" and that it (the court) would set a new court date.

{¶ 39} Another pretrial conference was held on October 31, 2017. At the beginning of the conference, the prosecutor told the court that Simkins had filed two pro se motions and that Simkins "is representing himself at this point." The court and prosecutor then discussed whether a plea had been offered. The court indicated that it would set the matter for a jury trial on November 16, 2017. The court acknowledged the State's representation that Simkins wanted to represent himself, but Simkins said nothing regarding a waiver of his right to counsel.

{¶ 40} Simkins entered a plea on November 8, 2017. The prosecutor began the

hearing by stating:

> * * * It's my understanding that Mr. Simkins has come in and had an opportunity to speak with Mr. Grove as a friend of the court. I have discussed an offer that I communicated to Mr. Grove and I believe he communicated that information to Mr. Simkins and that Mr. Simkins would like to avail himself of that offer. I believe that Mr. Grove is helping Mr. Simkins execute a waiver of trial. Furthermore, it's my understanding he would like to enter a no contest plea to the amended charge of physical control. In exchange for a plea to that amended charge the remaining traffic charges would be dismissed and when the court is ready I can go ahead and make a statement of facts on the record.

{¶ 41} Grove then confirmed for the court that he was acting "solely as a friend of the court in communicating the offer to Mr. Simkins who is representing himself." Simkins also stated that he wanted to waive a jury and "to waive whatever I have to waive to get this behind me." Grove showed Simkins a waiver of jury trial form and indicated where Simkins needed to sign it. Grove also showed Simkins the plea form. Grove and Simkins then had a lengthy exchange, quoted in the majority opinion, during which Grove reviewed the plea form with Simkins and confirmed that Simkins knew that he had a right to an attorney, had been told the nature of the charges and the penalties he faced, and knew that he had a right to bail, to a jury trial, to present witnesses, to question witnesses against him, and not to testify. Grove told Simkins that the State was required to prove all of the elements of the offense and the effect of a no contest plea. Simkins expressed his understanding. Grove told Simkins, "Then you need to execute that if you are going

to go forward with a no contest plea." Simkins signed the plea form. The plea included statements, in all capital letters, that the defendant understood "the above rights and points of law, including my right to counsel and the effect of my plea. I knowingly, intelligently, and voluntarily waive my rights and willingly wish to enter a plea of guilty or no contest."

{¶ 42} The trial court confirmed with Simkins that he wished to enter a no contest plea to the amended charge, and it accepted Simkins's no contest plea.

{¶ 43} The State did not meet its burden of overcoming the presumption against a valid waiver of Simkins's right to counsel. At his first pretrial conference on October 12, Simpkins was informed that he should go to the Public Defender's Office, and Simpkins told the trial court that he did not want to waive any of his rights. The prosecutor expressed at the October 31 pretrial conference that Simkins was representing himself, but the trial court did not engage in any discussion with Simkins to effectuate a waiver of Simkins's right to counsel; Simkins made no affirmative statements that he wished to proceed without the assistance of counsel.

{¶ 44} The November 8 hearing, during which Simkins entered his no contest plea, created a potentially confusing situation in which Simkins was nominally pro se, but both Simkin and the court were receiving substantial assistance from Mr. Grove, a public defender. The attorney had conveyed the State's plea offer to Simkins and, at the hearing, the attorney directed Simkins to review and sign the waiver of jury form and the plea form. It was the attorney, not the trial court, who provided Simkins with the information typically addressed in a plea colloquy. Simkins acknowledged that he had "already been told of [the nature of the charges] and the possible penalties," but neither

Grove nor the trial court reiterated them orally at the hearing.

{¶ 45} Grove made clear to the trial court that he was acting as a friend of the court and not as Simkins's counsel, but Simkins was never asked whether he understood that Grove was not his attorney and whether he (Simkins) would be willing to proceed without an attorney, such as Grove, present. Simkins was informed of his right to counsel, but never was expressly asked if he wished to waive that right. The trial court never made Simkins aware of the "dangers and disadvantages of self-representation." *See, e.g.*, *State v. Ruley*, 2d Dist. Miami No. 2017-CA-10, 2018-Ohio-3201, ¶ 13; *State v. Gatewood*, 2d Dist. Clark No. 2008 CA 64, 2009-Ohio-5610, ¶ 36. As the trial court noted on October 12, there are "a lot of different legal ramifications that go along with" the OVI charge.

{¶ 46} In short, I conclude that the totality of the circumstances did not establish that Simkins knowingly, voluntarily, and intelligently waived his right to counsel at his arraignment, pretrial conferences, or plea hearing.

{¶ 47} Alone, the trial court's failure to obtain a valid waiver of counsel from Simkins does not warrant the reversal of his conviction. "Because the right to the assistance of counsel in a petty offense is discretionary under the Criminal Rules, the fact that the trial court failed to obtain a valid waiver under Crim.R. 44(C) does not mean that the judgment itself must be vacated. 'Where * * * the offense is a petty offense, there is nothing fatally defective with the judgment in general, but only with the "sentence of confinement." ' " (Citations omitted.) *Owens*, 2d Dist. Montgomery No. 23150, 2010-Ohio-561, at ¶ 30.

{¶ 48} In the absence of a valid waiver of Simkins's right to counsel, the trial court

was prohibited from sentencing him to a period of incarceration, including a suspended jail sentence. Accordingly, I would modify Simkins's sentence to remove the suspended sentence and affirm Simkins's conviction as modified.


Copies sent to:

Stephanie L. Cook
Marcy A. Vonderwell
Hon. Daniel G. Gehres