[Cite as *State v. Brazo*, 2021-Ohio-4006.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. Craig R. Baldwin, P. J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2021 CA 0016 |
| STEPHEN BRAZO | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common Pleas, Case No.  19 CR 00951


JUDGMENT:      Affirmed in Part; Reversed in Part, and Remanded


DATE OF JUDGMENT ENTRY:      November 9, 2021


APPEARANCES:

For Plaintiff-Appellee

WILLIAM C. HAYES
PROSECUTING ATTORNEY
PAULA M. SAWYERS
ASSISTANT PROSECUTOR
20 South Second Street, Fourth Floor
Newark, Ohio  43055

For Defendant-Appellant

JAMES A. ANZELMO
446 Howland Drive
Gahanna, Ohio  43230

*Wise, J.*

**{¶1}** Defendant-Appellant Stephen Brazo appeals his conviction and sentence on one count of aggravated possession of drugs entered in the Licking County Court of Common Pleas following a guilty plea.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** The relevant facts and procedural history are as follows:

**{¶3}** On November 21, 2019, Appellant Stephen Brazo was indicted on one count of Aggravated Possession of Drugs (Methamphetamine), a violation of R.C. §2925.11(A)(C)(1)(c), a felony of the 2nd degree. The case was scheduled for jury trial on October 8, 2020.

**{¶4}** On October 8, 2020, the date scheduled for trial, Appellant arrived approximately an hour and a half late. At that time, Appellant indicated that he wished to plead guilty to the charge.

**{¶5}** Appellant completed a plea form which his attorney reviewed with him and which he stated that he understood. The trial court reviewed with Appellant the rights that he was giving up by pleading to the Indictment, including the right to a trial, the right to have the State prove the case beyond a reasonable doubt, the right to confront his accuser, the right to call and question and cross-examine witnesses, and the right to testify himself if he chose to. (T. at 8-11). When Appellant hesitated during his plea of guilty, the trial court made it clear that he was entitled to a jury trial if he so desired. (T. at 12-13). After advising Appellant of that fact, the trial court asked Appellant if he wanted to plead guilty to the charge and Appellant stated in the affirmative. (T. at 13).

**{¶6}** The State presented the following recitation of the facts:

{¶7}    On May 2, 2019, Officer Walker of the Pataskala Police Department was operating a marked Pataskala Police Cruiser on routine patrol near South Township Road and Broad Street in Pataskala, Licking County, Ohio. (T. at 14). The officer pulled behind a silver Dodge Pickup Truck and ran the license plate, which came back as expired as of February 2019. *Id.* The officer noticed a white validation sticker on the license plate indicating that the vehicle was valid until 2020. *Id.* The vehicle turned into the Duke and Duchess Gas Station located at 110 West Broad Street in Pataskala, Licking County, Ohio. *Id.* Contact was made with the driver of the vehicle, Stephen Brazo, hereinafter the Appellant. *Id.* The passengers were identified as co-Defendants Benjamin Johnson (rear passenger) and Alicia Clark (front seat passenger). *Id.* A close inspection of the white validation sticker revealed that the sticker belonged to a vehicle with license plate HMY3687 (returning to a silver Pontiac owned by Appellant), whereas the valid number for the silver Dodge Pickup plate was HIG5043. *Id.* Due to the fictitious plate validation sticker, the occupants were removed and the vehicle inventoried for towing. *Id.* The officer issued the traffic citation for fictitious plates, while a second officer performed an inventory search of the vehicle. *Id.* Officers located two small plastic baggies containing a crystal-like substance between the front driver and passenger seats and two containers with digital scales and a smoking pipe in the same location. *Id.* Officers also located a gray plastic baggie containing a large amount of methamphetamine under the right rear passenger seat where co-Defendant Johnson had been seated. *Id.* Digital scales and smoking paraphernalia were recovered from the vehicle. *Id.* The drugs were tested and determined to be 98.275 grams of methamphetamine, a schedule II controlled substance. *Id.* Bulk amount for methamphetamine is 3 grams. *Id.* The Appellant was interviewed and

stated that Johnson had told him where he could buy some cocaine and that he took Johnson to a hotel where he assumed Johnson had scored. *Id*. Appellant further admitted that the drugs inside of the vehicle were his. *Id*.

**{¶8}** After Appellant was advised of the facts of the case as set forth above Appellant was advised as to the nature of the charge against him and the maximum penalty he could face if he pled to the charge. (T. at 6-10, 14-16).

**{¶9}** Appellant agreed with the facts as presented by Appellee. (T. at 16).

**{¶10}** The trial court ultimately found Appellant guilty based on his plea, and sentenced Appellant to three (3) to four and a half (4 ½) years in prison, pursuant to the Reagan Tokes Law. (T. at 25). (*See* Oct. 8, 2020 Judgment Entry).

**{¶11}** Appellant then moved to withdraw his guilty plea. The trial court denied Appellant's motion to withdraw.

**{¶12}** Appellant now appeals, raising the following assignments of error:

**ASSIGNMENTS OF ERROR**

**{¶13}** "I. STEPHEN BRAZO DID NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY PLEAD GUILTY, IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION SIXTEEN, ARTICLE ONE OF THE OHIO CONSTITUTION.

**{¶14}** "II. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING BRAZO'S MOTION TO WITHDRAW HIS PLEA, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION.

**{¶15}** "III. AS AMENDED BY THE REAGAN TOKES ACT, THE REVISED CODE'S SENTENCES FOR FIRST AND SECOND DEGREE QUALIFYING FELONIES VIOLATES THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF OHIO.

**{¶16}** "IV. THE TRIAL COURT SENTENCED BRAZO TO AN INDEFINITE PRISON TERM IN CONTRAVENTION OF THE SENTENCING STATUTES, IN VIOLATION OF BRAZO'S RIGHTS TO DUE PROCESS.

**{¶17}** "V. STEPHEN BRAZO RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."

**I.**

**{¶18}** In his first assignment of error, Appellant argues his plea of guilty was not knowingly, intelligently or voluntarily made. We disagree.

**{¶19}** Crim.R. 11(C)(2) sets forth a trial court's duties during a felony plea hearing to address the defendant personally, to convey certain information to the defendant, and prohibits acceptance of a guilty plea or no contest without performing these duties. *State v. Holmes*, 5th Dist. Licking No. 09 CA 70, 2010-Ohio-428, ¶ 10. The rule specifically provides:

> In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally either in-person or by remote contemporaneous video in conformity with Crim.R. 43(A) and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶20} Crim.R. 11(C)(2) contains both constitutional advisements with which a trial court must strictly comply and non-constitutional advisements with which a trial court must substantially comply. In *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766 (2018) the Supreme Court of Ohio stated at paragraph 19:

A trial court need only substantially comply with the nonconstitutional advisements listed in Crim.R. 11(C)(2)(a). *Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, at ¶ 18. But "[w]hen the trial judge does not substantially comply with Crim.R. 11 in regard to a nonconstitutional right, reviewing courts must determine whether the trial court partially

complied or failed to comply with the rule." (Emphasis sic.) *Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, at ¶ 32. "If the trial judge partially complied, e.g., by mentioning mandatory postrelease control without explaining it, the plea may be vacated only if the defendant demonstrates a prejudicial effect." *Id.* But if the trial court completely failed to comply with the rule, the plea must be vacated. *Id.* Complete failure " 'to comply with the rule does not implicate an analysis of prejudice.' " *Id.*, quoting *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22.

**{¶21}** Here, Appellant argues the trial court failed to ensure that he subjectively understood that his guilty plea was a complete admission of guilt.

**{¶22}** Upon review, we find Appellant's arguments unpersuasive.

**{¶23}** At the change of plea hearing, upon inquiry by the trial court, Appellant acknowledged that by pleading guilty he was making a complete admission that he had committed the acts charged in the Indictment. (T. at 7). The trial court reviewed with Appellant the rights that he was giving up by pleading guilty to the Indictment, including the right to a trial, the right to confront and cross-examine witnesses, the right to present his own evidence, issue subpoenas to compel witnesses and to testify on his own behalf. (T. at 8, 11). The court advised Appellant that he could not be forced to testify at trial and that his silence could not be used against him. (T. at 11). The court advised Appellant that the State has the burden to prove the case beyond a reasonable doubt. (T. at 10). When Appellant hesitated, the trial court made it clear that he could have a jury trial if he so desired. (T. at 12-13). After advising Appellant of that fact, the trial court asked

Appellant again if he wanted to plead guilty to the charge, and Appellant stated that he did, in fact, wish to plead guilty to the charge. (T. at 13). Appellant was advised of the facts of the case, the nature of the charge against him, and the maximum penalty he could face if he pled to the charge. (T. at 6-10, 14-16). Appellant stated that he agreed with the facts as presented by the State of Ohio. (T. at 16).

**{¶24}** While Appellant argues that he made protestations of innocence at his plea hearing, a review of the transcript reveals that the first mention of innocence or claims that the drugs did not belong to him were only made after the trial court imposed its sentence. (T. at 29-30). Appellant cannot rely on post-plea statements or claims of innocence to establish that the trial court erred in accepting his plea. "[W]hen a defendant makes claims of innocence after a guilty plea has been accepted, a trial court has no duty to inquire into a defendant's reasons for pleading guilty." *State v. Damron*, 2nd Dist. Champaign No. 2014-CA-15, 2015-Ohio-2057, ¶ 10 citing *State v. Reeves,* 8th Dist. Cuyahoga No. 100560, 2014–Ohio–3497, ¶ 13 (citing cases); *see also State v. Darks,* 10th Dist. Franklin No. 05AP–92, 2006–Ohio–3144, ¶ 17–18 (citing cases).

**{¶25}** Based on the foregoing exchange, we find Appellant knowingly, voluntarily, and intelligently waived his rights and knowingly, voluntarily, and intelligently entered his guilty plea.

**{¶26}** Appellant's first assignment of error is overruled.

**II**.

**{¶27}** In his second assignment of error, Appellant argues the trial court erred in denying his motion to withdraw his guilty plea. We disagree.

**Standard of Appellate Review.**

{¶28} Under Crim.R. 32.1, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." A motion made pursuant to Crim.R. 32.1 is left to the sound discretion of the trial court. *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph two of the syllabus. Thus, we review the trial court's decision denying Appellant's motion under an abuse of discretion standard. *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, ¶ 32.

{¶29} The standard upon which the trial court is to review a request for a change of plea after sentence is whether there is a need to correct a manifest injustice. *State v. Marafa*, 5th Dist. Stark Nos. 2002CA00099, 2003-Ohio-257, ¶ 8.

{¶30} Although no precise definition of "manifest injustice" exists, in general, "'manifest injustice relates to some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process.' " *State v. Wooden*, 10th Dist. Franklin No. 03AP-368, 2004-Ohio-588, ¶10, *quoting State v. Hall,* 10th Dist. Franklin No. 03AP-433, 2003-Ohio-6939; *see, also, State v. Odoms*, 10th Dist. Franklin No. 04AP-708, 2005-Ohio-4926, *quoting State ex rel. Schneider v. Kreiner,* 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998) ("[a] manifest injustice has been defined as a 'clear or openly unjust act' ").

{¶31} An appellate court may not substitute its judgment for that of the trial court when reviewing a matter pursuant to this standard. *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990). Furthermore, under the manifest injustice standard, a post-

sentence withdrawal motion is allowable only in extraordinary cases. *State v. Aleshire*, 5th Dist. Licking No. 09-CA-132, 2010-Ohio-2566, 2010 WL 2297917, ¶ 60, *citing State v. Smith*, 49 Ohio St.2d 261, 264, 361 N.E.2d 1324 (1977). The accused has the burden of showing a manifest injustice warranting the withdrawal of a guilty plea. *Smith, supra,* 49 Ohio St.2d 261, 361 N.E.2d 1324 at paragraph one of the syllabus.

**{¶32}** A criminal defendant's choice to enter a plea of guilty is a serious decision. *State v. Clark,* 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25. "Due process requires that a defendant's plea be made knowingly, intelligently, and voluntarily; otherwise, the defendant's plea is invalid." *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 10 (lead opinion), *citing Clark* at ¶ 25.

**{¶33}** Crim.R. 11(C)(2) governs the process that a trial court must follow before accepting a plea of guilty to a felony charge. *Bishop* at ¶ 11 (lead opinion). Most relevant here, Crim.R. 11(C)(2)(c) requires the court to notify the defendant that he has certain constitutional rights and to determine whether he understands that by pleading guilty, he is waiving those rights. The court may not accept a guilty plea without first doing the following:

> Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

**{¶34}** *Id.*

**{¶35}** Crim.R. 11(C)(2)(c) requires the court to communicate this information so that the defendant can make an intelligent and voluntary decision whether to plead guilty. *State v. Miller,* 159 Ohio St.3d 447, 2020-Ohio-1420, 151 N.E.3d 617, ¶ 18, *citing State v. Veney,* 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 18.

**{¶36}** Although literal compliance with Crim.R. 11 is preferred, the trial court need only "substantially comply" with the rule when dealing with the non-constitutional elements of Crim.R. 11(C). *State v. Ballard,* 66 Ohio St.2d 473, 475, 423 N.E.2d 115 (1981), citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977). In *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 12, the Ohio Supreme Court noted the following test for determining substantial compliance with Crim.R. 11:

Though failure to adequately inform a defendant of his constitutional rights would invalidate a guilty plea under a presumption that it was entered involuntarily and unknowingly, failure to comply with non-constitutional rights will not invalidate a plea unless the defendant thereby suffered prejudice.[*State v. Nero* (1990), 56 Ohio St.3d 106,] 108, 564 N.E.2d 474. The test for prejudice is 'whether the plea would have otherwise been made.' *Id.* Under the substantial-compliance standard, we review the totality of circumstances surrounding [the defendant's] plea and determine whether he subjectively understood [the effect of his plea].

**{¶37}** *See, State v. Sarkozy,* 117 Ohio St.3d 86, 2008-Ohio-509 at ¶ 19-20, 881 N.E.2d 1224.

**{¶38}** With respect to statements made during change of plea hearings, the United States Supreme Court has stated, "the representation of the defendant, his lawyer, and

the prosecutor in such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Machibroda v. United States*, 368 U.S. 487, 497, 82 S.Ct. 510, 515, 7 L.Ed.2d 473 (1962).

**{¶39}** "The ultimate question for the trial court is whether there is a 'reasonable and legitimate basis for the withdrawal of the plea.' " *State v. Xie*, 62 Ohio St.3d 521, 526, 584 N.E.2d 715 (1992).

**{¶40}** As set forth in our analysis under Assignment of Error I, we find that Appellant's plea was knowingly, intelligently and voluntarily made. A change of heart or mistaken belief about the plea is not a reasonable basis requiring a trial court to permit the defendant to withdraw his or her plea. *State v. Maddickes*, 2d Dist. Clark No. 2013-CA-7, 2013-Ohio-4510, ¶ 15.

**{¶41}** We find no abuse of discretion by the trial court in denying Appellant's motion to withdraw his guilty plea made after imposition of sentence.

**{¶42}** Appellant's second assignment of error is overruled.

III., V.

**{¶43}** We address Appellant's third and fifth assignments of error together. In his third assignment of error, Appellant argues the indefinite sentencing provisions contained in the Reagan Tokes Act, R.C. §2967.271, are unconstitutional as they violate the separation of powers and due process provisions of the United States and Ohio

constitutions. In his fifth assignment of error, Appellant argues his counsel rendered ineffective assistance by failing to object to his indefinite sentence.

**{¶44}** R.C. §2967.271 provides in relevant part:

(B) When an offender is sentenced to a non-life felony indefinite prison term, there shall be a presumption that the person shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier.

(C) The presumption established under division (B) of this section is a rebuttable presumption that the department of rehabilitation and correction may rebut as provided in this division. Unless the department rebuts the presumption, the offender shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier. The department may rebut the presumption only if the department determines, at a hearing, that one or more of the following applies:

(1) Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:

(a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or

committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.

(b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

(D)(1) If the department of rehabilitation and correction, pursuant to division (C) of this section, rebuts the presumption established under division (B) of this section, the department may maintain the offender's incarceration in a state correctional institution under the sentence after the expiration of the offender's minimum prison term or, for offenders who have a presumptive earned early release date, after the offender's presumptive earned early release date. The department may maintain the offender's incarceration under this division for an additional period of incarceration determined by the department. The additional period of incarceration shall be a reasonable period determined by the department, shall be specified by the department, and shall not exceed the offender's maximum prison term.

(2) If the department maintains an offender's incarceration for an additional period under division (D)(1) of this section, there shall be a presumption that the offender shall be released on the expiration of the offender's minimum prison term plus the additional period of incarceration specified by the department as provided under that division or, for offenders who have a presumptive earned early release date, on the expiration of the additional period of incarceration to be served after the offender's presumptive earned early release date that is specified by the department as provided under that division. The presumption is a rebuttable presumption that the department may rebut, but only if it conducts a hearing and makes the determinations specified in division (C) of this section, and if the department rebuts the presumption, it may maintain the offender's incarceration in a state correctional institution for an additional period determined as specified in division (D)(1) of this section. Unless the department rebuts the presumption at the hearing, the offender shall be released from service of the sentence on the expiration of the offender's minimum prison term plus the additional period of incarceration specified by the department or, for offenders who have a presumptive earned early release date, on the expiration of the additional period of incarceration to be served after the offender's presumptive earned early release date as specified by the department.

{¶45} The provisions of this division regarding the establishment of a rebuttable presumption, the department's rebuttal of the presumption, and the department's

maintenance of an offender's incarceration for an additional period of incarceration apply, and may be utilized more than one time, during the remainder of the offender's incarceration. If the offender has not been released under division (C) of this section or this division prior to the expiration of the offender's maximum prison term imposed as part of the offender's non-life felony indefinite prison term, the offender shall be released upon the expiration of that maximum term.

**{¶46}** Appellant argues these portions of R.C §2967.271 permitting the Department of Rehabilitation and Corrections (DRC) to administratively extend his prison term beyond his presumptive minimum prison term violate the United States and Ohio Constitutions. However, Appellant has not yet been subject to the application of these provisions, as he has not yet served his minimum term, and therefore has not been denied release at the expiration of his minimum term of incarceration.

**{¶47}** This Court has addressed the concept of ripeness for review in regard to R.C. §2967.271 in *State v. Downard*, 5th Dist. Muskingum, CT2019, 2020-Ohio-4227:

> The Ohio Supreme Court discussed the concept of ripeness for review in *State ex rel. Elyria Foundry Co. v. Indus. Comm.*, 82 Ohio St.3d 88, 1998-Ohio-366, 694 N.E.2d 459:

> Ripeness "is peculiarly a question of timing." *Regional Rail Reorganization Act Cases* (1974), 419 U.S. 102, 140, 95 S.Ct. 335, 357, 42 L.Ed.2d 320, 351. The ripeness doctrine is motivated in part by the desire "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies * * *." *Abbott Laboratories v. Gardner*

(1967), 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681, 691. As one writer has observed:

> The basic principle of ripeness may be derived from the conclusion that 'judicial machinery should be conserved for problems which are real or present and imminent, not squandered on problems which are abstract or hypothetical or remote.' * * * [T]he prerequisite of ripeness is a limitation on jurisdiction that is nevertheless basically optimistic as regards the prospects of a day in court: the time for judicial relief is simply not yet arrived, even though the alleged action of the defendant foretells legal injury to the plaintiff. *Comment, Mootness and Ripeness: The Postman Always Rings Twice* (1965), 65 Colum. L.Rev. 867, 876. *Id.* at 89, 694 N.E.2d at 460.

**{¶48}** In *State v. McCann,* 8th Dist. Cuyahoga No. 85657, 2006-Ohio-171, the defendant argued because the Parole Board, pursuant to R.C. 2967.28, could extend his sentence by up to an additional five years for violation of post-release control, the statute was unconstitutional. The Eighth District Court of Appeals concluded because McCann was not currently the subject of such action by the Parole Board, the issue was not yet ripe for review. *Id.* at ¶6.

**{¶49}** Likewise, in the instant case, while R.C. §2967.271 allows the DRC to rebut the presumption Appellant will be released after serving his three (3) year minimum sentence and potentially continue his incarceration to a term not exceeding four and one-half (4 ½)years, Appellant has not yet been subject to such action by the DRC, and thus the constitutional issue is not yet ripe for our review. *Downard*, at ¶8-11. *See also, State v. Buckner,* 5th Dist. Muskingum Nos. CT2020-0023 & CT2020-0024, 2020-Ohio-7017;

*State v. Wolfe,* 5th Dist. Licking No. 2020CA00021, 2020-Ohio-5501; *State v. Cochran*, 5th Dist. Licking No. 2019 CA 00122, 2020-Ohio-5329; *State v. Clark*, 5th Dist. Licking No. 2020 CA 00017, 2020-Ohio-5013; *State v. Manion,* 5th Dist. Tuscarawas No. 2020 AP 03 0009, 2020-Ohio-4230; *State v. Kibler*, 5th Dist. Muskingum No. CT2020-0026, 2020-Ohio-4631.

{¶50} As Appellant herein has not yet been subject to the provisions of R.C. §2967.271, we therefore find here as we did in *Downard*, Appellant's constitutional challenges and his trial counsel's failure to raise the same are not yet ripe for review.

{¶51} Appellant's third and fifth assignments of error are overruled.

**IV**.

{¶52} In his fourth assignment of error, Appellant argues that at the change of plea and sentencing hearing, the trial court erred in failing to provide him with all of the information required pursuant to R.C. §2929.19(B)(2)(c). We agree.

{¶53} R.C. §2929.19(B)(2)(c) became effective March 22, 2019, and to date its application has not received close scrutiny. The relevant portions of this statute provide:

(B)(1) At the sentencing hearing, the court, before imposing sentence, shall consider the record, any information presented at the hearing by any person pursuant to division (A) of this section, and, if one was prepared, the presentence investigation report made pursuant to section 2951.03 of the Revised Code or Criminal Rule 32.2, and any victim impact statement made pursuant to section 2947.051 of the Revised Code.

(2) Subject to division (B)(3) of this section, if the sentencing court determines *at the sentencing hearing* that a prison term is necessary or required, the court shall do all of the following:

(Emphasis added.)

**{¶54}** Subsection (B)(2)(c) sets out the notifications that are to be provided in accordance with the directive of Subsections (B)(1) and (2) which mandates that the court notify the offender at the sentencing hearing:

(c) If the prison term is a non-life felony indefinite prison term, notify the offender of all of the following:

(i) That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;

(ii) That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;

(iii) That if, as described in division (B)(2)(c)(ii) of this section, the department at the hearing makes the specified determinations and rebuts

the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for the length of time the department determines to be reasonable, subject to the limitation specified in section 2967.271 of the Revised Code;

(iv) That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to the limitation specified in section 2967.271 of the Revised Code;

(v) That if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

(d) Notify the offender that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced, other than to a sentence of life imprisonment, for a felony of the first degree or second degree, for a felony sex offense, or for a felony of the third degree that is an offense of violence and is not a felony sex offense. This division applies with respect to all prison terms imposed for an offense of a type described in this division, including a non-life felony indefinite prison term and including a term imposed for any offense of a type described in this division that is a risk reduction sentence, as defined in section 2967.28 of the Revised Code. If a court imposes a sentence including a prison term of a type described in division (B)(2)(d) of

this section on or after July 11, 2006, the failure of a court to notify the offender pursuant to division (B)(2)(d) of this section that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison or to include in the judgment of conviction entered on the journal a statement to that effect does not negate, limit, or otherwise affect the mandatory period of supervision that is required for the offender under division (B) of section 2967.28 of the Revised Code. Section 2929.191 of the Revised Code applies if, prior to July 11, 2006, a court imposed a sentence including a prison term of a type described in division (B)(2)(d) of this section and failed to notify the offender pursuant to division (B)(2)(d) of this section regarding post-release control or to include in the judgment of conviction entered on the journal or in the sentence a statement regarding post-release control.

(e) Notify the offender that the offender may be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced for a felony of the third, fourth, or fifth degree that is not subject to division (B)(2)(d) of this section. This division applies with respect to all prison terms imposed for an offense of a type described in this division, including a term imposed for any such offense that is a risk reduction sentence, as defined in section 2967.28 of the Revised Code. Section 2929.191 of the Revised Code applies if, prior to July 11, 2006, a court imposed a sentence including a prison term of a type described in division (B)(2)(e) of this section and failed to notify the offender pursuant to

division (B)(2)(e) of this section regarding post-release control or to include in the judgment of conviction entered on the journal or in the sentence a statement regarding post-release control.

(f) Notify the offender that, if a period of supervision is imposed following the offender's release from prison, as described in division (B)(2)(d) or (e) of this section, and if the offender violates that supervision or a condition of post-release control imposed under division (B) of section 2967.131 of the Revised Code, the parole board may impose a prison term, as part of the sentence, of up to one-half of the definite prison term originally imposed upon the offender as the offender's stated prison term or up to one-half of the minimum prison term originally imposed upon the offender as part of the offender's stated non-life felony indefinite prison term. If a court imposes a sentence including a prison term on or after July 11, 2006, the failure of a court to notify the offender pursuant to division (B)(2)(f) of this section that the parole board may impose a prison term as described in division (B)(2)(f) of this section for a violation of that supervision or a condition of post-release control imposed under division (B) of section 2967.131 of the Revised Code or to include in the judgment of conviction entered on the journal a statement to that effect does not negate, limit, or otherwise affect the authority of the parole board to so impose a prison term for a violation of that nature if, pursuant to division (D)(1) of section 2967.28 of the Revised Code, the parole board notifies the offender prior to the offender's release of the board's authority to so impose a prison term.

Section 2929.191 of the Revised Code applies if, prior to July 11, 2006, a court imposed a sentence including a prison term and failed to notify the offender pursuant to division (B)(2)(f) of this section regarding the possibility of the parole board imposing a prison term for a violation of supervision or a condition of post-release control.

(g)(i)1 Determine, notify the offender of, and include in the sentencing entry the total number of days, including the sentencing date but excluding conveyance time, that the offender has been confined for any reason arising out of the offense for which the offender is being sentenced and by which the department of rehabilitation and correction must reduce the definite prison term imposed on the offender as the offender's stated prison term or, if the offense is an offense for which a non-life felony indefinite prison term is imposed under division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code, the minimum and maximum prison terms imposed on the offender as part of that non-life felony indefinite prison term, under section 2967.191 of the Revised Code. The court's calculation shall not include the number of days, if any, that the offender served in the custody of the department of rehabilitation and correction arising out of any prior offense for which the prisoner was convicted and sentenced.

{¶55} Thus, the trial court must provide the information described in R.C. §2929.19(B)(2)(c) to a defendant at the sentencing hearing to fulfill the requirements of the statute.

{¶56} In this case, the court did advise Appellant that the minimum term set by the court and that the maximum term was set by statute, that being 50% of the minimum term imposed. (T. at 8). However, the trial court failed to advise Appellant as to the remainder of the requirements set forth in R.C. §2929.19(B)(2)(c).

{¶57} Appellant's fourth assignment of error is sustained and this matter is remanded to the trial court for the limited purpose of resentencing in accordance with R.C. §2929.19(B)(2)(c).

{¶58} Based on the foregoing, the decision of the Court of Common Pleas of Licking County, Ohio, is affirmed in part, reversed in part and remanded for resentencing in accordance with R.C. §2929.19(B)(2)(c) .

By: Wise, J.

Baldwin, P. J., and

Gwin, J., concur.

JWW/kw 1027

*Gwin, J., concurs in part; dissent in part.*

{¶59} I concur in the majority's disposition of Appellant's First, Second and Fourth Assignments of Error.

{¶60} I respectfully dissent from the majority's opinion concerning ripeness and Appellant's Third and Fifth Assignments of Error for the reasons set forth in my dissenting opinion in *State v. Wolfe,* 5th Dist., Licking No. 2020 CA 00021, 2020-Ohio-5501.

{¶61} I further note that the Ohio Supreme Court has accepted a certified conflict on the issue of whether the constitutionally of the Reagan Tokes Act is ripe for review on  direct appeal or only after the defendant has served the minimum term and been subject  to extension by application of the Act. *See, State v. Maddox*, 6th Dist. Lucas No. L-19-  1253, 2020-Ohio-4702, *order to certify conflict allowed, State v. Maddox*, 160 Ohio St.3d  1505, 2020-Ohio-6913, 159 N.E.3d 1150(Table) The conflict cases are *State v. Leet*, 2d  Dist. Montgomery No. 28670, 2020-Ohio-4592;  *State v. Ferguson*, 2d Dist. Montgomery  No. 28644, 2020-Ohio-4153;  *State v. Barne*s, 2d Dist. Montgomery No. 28613, 2020-  Ohio-4150; and  *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837;  *See also, State v. Downard,* 5th Dist. Muskingum No. CT2019-0079, 2020-Ohio-4227,  *appeal accepted on Appellant's Proposition of Law No. II, State v. Downard*, 160 Ohio  St.3d 1507, 2020-Ohio-6835, 159 N.E.3d 1507 (Table)(Sua sponte, cause held for the  decision in 2020-1266, *State v. Maddox*). The Ohio Supreme Court heard oral arguments  on that case on June 29, 2021.